**Sandra L. ROMAN, Petitioner,**

v.

**DEPARTMENT OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 2002.

Decided Oct. 3, 2002.

Gregory A. Stapp, Williamsport, for petitioner.

Robin M. Lewis, Camp Hill, for respondent.

Before COLINS, President Judge, FRIEDMAN, J., and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Sandra L. Roman (Claimant) petitions for review of a determination of the De-

partment of Corrections (DOC) denying her request for a hearing regarding her entitlement to Act 632 benefits.[1] We affirm.

While Claimant was working for DOC in 1989, she sustained a back injury during an altercation with an inmate. Claimant had spinal fusion surgery performed to treat this injury and returned to work. Thereafter, in 1995, Claimant slipped and fell while at work and began receiving benefits under either Act 632 or the Heart and Lung Act.[2] DOC contends that Claimant received these benefits from October 26, 1996 through January 15, 1997. Claimant then returned to work but then stopped working again on May 31, 1998 by order of her treating physician. Afterwards, Claimant asserts that she again started receiving Act 632 benefits and cites to her attendance records which show that she was off duty and contain the abbreviations "DH" and "SP", which Claimant contends indicate that she was receiving Heart and Lung Act benefits. (See DOC's Supplemental Record, which is not numbered). However, DOC contends that Claimant applied to have her Act 632 benefits reinstated but was instead placed on Work Related Disability Leave pursuant to the provisions of the Collective Bargaining Agreement (CBA) (R.R. at 8a). In

support of its contention, DOC cites a July 14, 1998 letter it sent to Claimant, which states:

> In compliance with ... the Collective Bargaining Agreement, *you will be placed on Work Related Disability effective May 31, 1998* ... Effective June 24, 1998, Dr. Rigan returned you to work in a light duty position ... However, due to your suspension, unrelated to your work injury, we are not able to return you to work at this time ... You may appeal our decision on Work Related Disability Leave.

(R.R. at 3a) (emphasis added). The record does not indicate that Claimant ever appealed this decision.

The suspension that the July 14th letter refers to was the result of Claimant's arrest on June 26, 1998 in New York City on charges of cocaine possession. By letter dated July 2, 1998, Claimant was advised that she was being suspended for 30 days without pay or benefits pending an investigation into her arrest and informed that her actions may have violated the Governor's Code of Conduct, Section III Criminal Charges and the DOC's Code of Ethics. Claimant was also advised that a predisciplinary conference would be scheduled in the near future. This letter also in-

---

**1.** Act of December 8, 1959, P.L. 1718, *as amended*, 61 P.S. § 951. We note that "[t]he act of December 8, 1959, P.L. 1718, known as Act 632, originally related to 'employes of State penal and correctional institutions.' By the Act of September 2, 1961, P.L. 1224, Act 534, the legislature broadened the original act to include certain employees of the Department of Public Welfare and of county boards of assistance. Thus, benefits under 61 P.S. § 951 may be either Act 632 benefits or Act 534 benefits, depending on the nature of the claimant." *Hardiman v. Department of Public Welfare, Woodville State Hospital*, 121 Pa. Cmwlth. 120, 550 A.2d 590, 592 (1988). In addition, Act 632/534 benefits are virtually identical to those benefits afforded by the

"Heart and Lung Act", Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637–638. *See Gribble v. Department of Corrections*, 711 A.2d 593, (Pa.Cmwlth.1998). Thus, prior cases involving benefits under Act 632, Act 534 and the Heart and Lung Act are all relevant to our determination of this matter.

**2.** The record is not clear as to which type of benefits Claimant actually received. We note that both Act 632 and the "Heart and Lung Act" provide benefits to corrections officers and that these Acts are substantially similar. *See* note 1, *infra*. Thus, the type of benefits she received is not particularly relevant and would not affect the outcome of this matter.

formed Claimant of her appeal rights under the CBA and civil service law. (R.R. 1a). By letter dated August 7, 1998, Claimant was advised that, as a result of the pre-disciplinary conference, it was determined that she was in fact arrested for cocaine possession. Accordingly, DOC terminated Claimant's employment effective August 8, 1998. DOC again advised Claimant of her appeal rights. (R.R. at 4a–6a). The record does not indicate that Claimant ever appealed her dismissal. After her dismissal, Claimant began receiving workers' compensation benefits.

On April 27, 2001, nearly three years after Claimant was dismissed from her employment, Claimant's attorney sent a letter advising DOC that he was representing Claimant in her claim for Act 632 benefits. The letter states that:

> At no time during her [pre-disciplinary conference] was there any mention of her Act 534/632 benefits nor was she ever notified that they would be stopped. As of August, 1998, Ms. Roman stopped receiving Act 534/632 benefits.
>
> The purpose of this letter is to request a hearing with the Department of Corrections in order to have her Act 632 benefits reinstated from August 8, 1998 to present for failure to comply with the laws of the Commonwealth of Pennsylvania with regards to notice and hearing prior to termination of Act 632 benefits.

(R.R. at 7a). DOC responded to Claimant's request with a May 11, 2001 letter informing Claimant that a hearing would not be granted because she was receiving Work Related Disability pay rather than Act 632 benefits at the time of her dismissal and that she never appealed this decision. (R.R. at 8a). By letter dated June

4, 2001, Claimant's attorney forwarded several documents, including the above-referenced attendance sheet, to DOC in support of his contention that Claimant was in fact receiving Act 632 benefits at the time of her dismissal. (R.R. at 9a). By letter dated June 8, 2001, DOC again advised Claimant that it would not grant her a hearing. (R.R. at 10a). This appeal followed.[3]

On appeal, Claimant argues that the determination of DOC is erroneous because she was receiving Act 632 benefits at the time of her dismissal and that these benefits were unilaterally terminated without any notice or hearing in violation of her due process rights. Claimant also asserts that, although she did not contest her right to Act 632 benefits until almost three years after she was dismissed, she is entitled to an appeal *nunc pro tunc* because she has never received any notification that her Act 632 benefits were being terminated.

▮▮▮▮ Act 632 provides, in relevant part, that:

> Any employe of a State penal or correctional institution under the Bureau of Correction of the Department of Justice ... who is injured during the course of his employment by an act of any inmate or any person confined in such institution ... shall be paid, by the Commonwealth of Pennsylvania, his full salary, until the disability arising therefrom no longer prevents his return as an employe of such department, board or institution at a salary equal to that earned by him at the time of his injury ...

61 P.S. § 951. In order to receive benefits under Act 632, the burden of proof is

---

**3.** Pursuant to Section 704 of the Administrative Agency Law, our scope of review is limited to determining whether the agency's decision is supported by the evidence, whether it committed an error of law or whether it violated the appellant's constitutional rights. 2 Pa.C.S. § 704.

initially on the claimant to prove that his work-related injury was caused by the act of an inmate. Generally, after benefits have been granted to an employee under Act 632, the employer may not terminate benefits until it proves that: 1) the claimant is able to return to work because his work-related disability has ceased or 2) the claimant's disability has been determined to be permanent rather than temporary. *Williams v. Department of Corrections*, 164 Pa.Cmwlth. 224, 642 A.2d 608, 610 (1994). It is well-settled that an employer must conduct a full due process hearing in which it establishes one of these components before an *employee's* benefits can be terminated. *Id.*

The purpose of Act 632/534 and the Heart and Lung Act (hereinafter "Act 632") is to provide a full salary, not compensation, to employees in certain dangerous occupations who have been injured on the job and who are expected to recover and return to work in the foreseeable future. These Acts, however, are not a replacement for workers' compensation benefits. If an employee's injury is found to be "permanent" rather than temporary, that employee should not continue to receive benefits under Act 632 but should properly receive workers' compensation benefits. *See Cunningham v. Pennsylvania State Police*, 510 Pa. 74, 80, 507 A.2d 40, 43 (1986) and *Sidlow v. Township of Nether Providence*, 153 Pa.Cmwlth. 390, 621 A.2d 1105, 1110 (1993) (concurring opinion). We note that the Commonwealth has a right to subrogation for any workers' compensation benefits received by a claimant during the period when that claimant is receiving his full salary under Act 632. *Hardiman*, 550 A.2d at 594.

In support of its contention that Claimant is not entitled to a hearing regarding her Act 632 benefits, DOC argues that entitlement to benefits under Act 632 is contingent upon membership in the workforce of DOC. Therefore, DOC argues that once Claimant was dismissed from her job as a result of her arrest for cocaine possession, she was no longer an employee of DOC and therefore not entitled to Act 632 benefits. In support of its argument, DOC cites our Supreme Court's decision in *Camaione v. Borough of Latrobe*, 523 Pa. 363, 567 A.2d 638 (1989), *cert. denied*, 498 U.S. 921, 111 S.Ct. 298, 112 L.Ed.2d 251 (1990).

In *Camaione*, the appellee, a police officer, suffered a work-related injury in 1975 and began receiving Heart and Lung Act benefits. Appellee also received workers' compensation benefits which were paid to the Borough as a form of subrogation. In 1981, the Borough enacted a resolution requiring the two oldest police officers in the Borough to retire. Appellee was one of these police officers and, after the resolution was enacted, he stopped receiving his Heart and Lung Act benefits and began receiving his pension check and workers' compensation benefits. With his pension and workers' compensation benefits combined, appellee was receiving more money than he was before his Heart and Lung Act benefits were terminated. However, this situation ended when, in 1993, a workers' compensation judge determined that appellee was no longer totally disabled and adjusted his weekly benefits. Because of this adjustment, appellee received a $25,000 lump sum payment and his workers' compensation benefits ceased. At this point, appellee began receiving less money than he was prior to the time when his Heart and Lung Act benefits were terminated.

Thereafter, appellee filed an action in mandamus with the trial court arguing that he was entitled to his full salary under the Heart and Lung Act because he was never afforded a hearing to establish whether his condition had changed. The

trial court denied appellee's requested relief. On appeal, we reversed the trial court and, relying on *Callahan v. Pennsylvania State Police*, 494 Pa. 461, 431 A.2d 946 (1981), we determined that due process required that appellee be given notice and a hearing before his Heart and Lung Act benefits could be terminated. However, the Supreme Court granted the Borough's petition for allowance of appeal and reversed our decision. The Supreme Court reasoned that:

The benefits conferred by the Heart and Lung Act do not guarantee lifetime employment. We have carefully reviewed the Heart and Lung Act and conclude that its provisions do no more than assure uninterrupted compensation of salary for current members of a police force while a temporary incapacity exists to insure that injured police officers are treated equally with actively employed officers. **There is no indication that this Act confers any rights upon injured officers as to the terms of their employment or that the Act in any way removes the right to hire, fire, furlough or retire** which is vested in the Borough under Section 46190. All that the Heart and Lung Act provides is that while an officer is a member of the police force his temporary incapacity status cannot be changed without a due process hearing. This is what *Callahan* stands for and we will not read it or the Act any broader, for to do so would grant greater rights to injured officers than to actively employed officers. Since the Borough has the sole right under Section 46190 to regulate the size and membership of its police force because of economic constraints, it had the right to invoke this section and retire Appellee. That being the case, **his retirement removed him from the group of employees covered by the Act.** Since Appellee did not have a right to continued membership in the police force different than any other police officer employed by the Borough, **there was no property right affected by his retirement. Accordingly, there was no adjudication which deprived him of a right for which a hearing was required.**

*Id.* at 368–369, 567 A.2d at 641 (emphasis added).

Furthermore, in *Williams*, DOC discharged the claimant and terminated his Heart and Lung benefits because it determined that he fully recovered and did not provide him with notice and a hearing before taking this action. On appeal, we considered the question of whether *Camaione* stood for the proposition that the claimant was not entitled to a hearing because his employment relationship with DOC had been severed. We determined that *Camaione* did not compel such a result because, in *Camaione*, the Borough's actions were authorized by legislation, whereas DOC's actions were solely the result of its own conclusion that the claimant had recovered from his injury. We noted that "it would be counter-productive to the purposes and mandates of the Heart and Lung Act for us to permit an employer unilaterally to discontinue benefits on the basis that it perceived that an employee's disability had ceased without support in the record for that proposition." *Williams*, 642 A.2d at 611.

■ We believe that the case *sub judice* is more akin to *Camaione* than *Williams*. Here, Claimant was arrested for cocaine possession and, as a result of that arrest, was subject to disciplinary action by DOC which removed her from DOC's workforce.[4] Claimant's violation of the law was

---

4. The record is not clear as to whether Claimant admitted to cocaine possession at her pre-

contrary to the Governor's Code of Conduct, which provides, in relevant part, that:

§ 7.173. Required action when an employe is formally charged with criminal conduct related to his employment with the Commonwealth or which constitutes a felony.

As soon as practicable after an employe has been formally charged with criminal conduct related to his employment with the Commonwealth or which constitutes a felony, the employe shall be suspended without pay. If the charge results in conviction in a court of law, the employe shall be terminated.

4 Pa.Code § 7.173. Pursuant to Section 7.173, DOC was required to dismiss Claimant from her job. DOT's actions were not unilateral or discretionary as they were in *Williams*. As the Borough's actions in *Camaione* were allowed by statute, DOC's actions in this case were allowed, and in fact required, by a regulation enacted by the Governor's office. Thus, because Claimant was no longer an employee of DOC after her discharge, she would not be entitled to have her salary paid pursuant to the Act 632.[5] Because of her discharge, Claimant was removed from the group of employees covered by Act 632. Thus, Claimant did not have a property right that was affected by her discharge and she was therefore not entitled to notice and a hearing regarding the termination of these benefits. Whether or not Claimant was receiving Act 632 benefits at the time of her discharge is not relevant to the outcome of this matter. As such, we fail to see how DOC erred in denying Claimant a hearing regarding her Act 632 benefits.

Accordingly, we affirm the determination of DOC.

### ORDER

AND NOW, October 3, 2002, the determination of the Department of Corrections by letters dated May 11, 2001 and June 8, 2001 denying Sandra L. Roman's request for a hearing regarding her entitlement to Act 632 benefits is hereby AFFIRMED.

disciplinary conference, whether she plead guilty or whether she was convicted. However, Claimant does not deny these charges in her brief nor does she contend that she was wrongfully discharged.

5. Under the Workers' Compensation Act, an employee only receives 2/3 of his salary as compensation, which is not subject to taxation. Thus, the employee receives roughly the amount that he would normally take home in his net pay after taxes. However, under Act 632, an employee receives his full gross salary while he is disabled, which is *not* subject to taxation. Thus, an employee receiving Act 632 benefits receives a windfall because he receives more money on disability than he would if he were working. *See City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 723 A.2d 747, 750 (Pa.Cmwlth.1999).