**Lynda CANTARELLA, Petitioner,**

v.

**DEPARTMENT OF CORRECTIONS, State Correctional Institution at Waymart, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 8, 2003.

Decided Nov. 14, 2003.

Cal A. Leventhal, Honesdale, for petitioner.

Shawn P. Kenny, Camp Hill, for respondent.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, and SIMPSON, Judge.

OPINION BY Judge PELLEGRINI.

Lynda Cantarella (Claimant) petitions for review of an order of the Secretary of the Department of Corrections (Department) adopting the proposed findings of fact and conclusions of law of a Hearing Examiner and denying Act 632[1] benefits to Claimant.

1. Section 1 of the Act of December 8, 1959, P.L. 1718, No. 632, *as amended* (Act 632), 61

Claimant worked for the Department as a food service instructor at the State Correctional Institute—Waymart (SCI–Waymart). Because part of her job duties required her to instruct inmates on how to perform certain tasks and assign them various job duties, at times she was alone with inmates in the dining room. On April 8, 2001, an inmate asked to meet with Claimant privately. Before that day, inmates had often approached Claimant asking to speak with her privately about matters concerning the control of the inmates at the institution. After receiving the request, Claimant asked her supervisor, Michael McDonnell (McDonnell), for permission to meet with the inmate. Although McDonnell had reservations about the private meeting, he nonetheless acquiesced if certain precautions were met. During Claimant's meeting with the inmate, the inmate reached over and started rubbing her buttocks. Claimant jumped up, yelled at the inmate and left the room. She immediately reported the incident to Lieutenant Gorel's office and McDonnell and filled out a misconduct form. Prison guards handcuffed the inmate and returned him to his cell. No food service instructor at SCI–Waymart had been touched on the buttocks in the past 25 years.[2]

Claimant tried to return to work the following two days after the incident, but each time left early because of her anxiety around the inmates. On April 17, 2001,

she sought treatment from Ronald Talaga, M.D. (Dr. Talaga), a family physician, who originally diagnosed her as suffering from a situational anxiety reaction. On May 23, 2001, however, Dr. Talaga diagnosed Claimant as suffering from post-traumatic stress syndrome.

Claimant remained out of work until August 15, 2001, when she returned to a position with the Department in the records department at SCI–Waymart with minimum inmate contact; however, that position was only available to her for 90 days. After the availability of that position expired, Claimant returned to her old position as a food service instructor on November 11, 2001, with restrictions that limited her inmate contact. However, she only stayed at that position until December 6, 2001, when she left because she was very tense while working as well as trying to act normal and not look scared when around inmates. Claimant has not worked since.

Claimant filed a claim for Act 632 benefits and a claim for workers' compensation benefits. A workers' compensation judge (WCJ) held a hearing on January 22, 2002, and issued a decision on May 16, 2002, finding that Claimant was entitled to compensation benefits for a psychic injury caused by an abnormal working situation.

A Hearing Examiner held an Act 632 hearing on May 7, 2002, at which Claimant testified on her own behalf. Claimant also

P.S. § 951, repealed in part not here relevant by Section 9(b)(2) of the Act of October 4, 1978, P.L. 909. Act 632 provides, in relevant part:

> Any employe of a State penal or correctional institution under the Bureau of Correction of the Department of Justice ... who is injured during the course of his employment by an act of any inmate or any person confined in such institution ... shall be paid, by the Commonwealth of Pennsylvania, his full salary, until the disability aris-

ing therefrom no longer prevents his return as an employe of such ... institution at a salary equal to that earned by him at the time of his injury.

**2.** Although the Hearing Examiner found that no female employee had been touched on the buttocks in the past 15 years, the only evidence on this matter indicates that the period of time was 25 years. (Hearing Examiner's opinion at 19; R.R. at 158a).

presented the deposition testimony of Dr. Talaga and presented the notes of testimony of co-worker Joseph Scalzo from the workers' compensation proceeding. The Department presented the notes of testimony of McDonnell from the workers' compensation proceeding; the testimony of Diane Zindell, a human resource analyst; and the testimony of Thomas B. Patterson, a Major of the guards at SCI–Waymart.

The Hearing Examiner found that it was not an abnormal working condition for a female food service instructor to be touched on the buttocks by an inmate and concluded that Claimant was not entitled to Act 632 benefits. In addition, while the Hearing Examiner was aware of the WCJ's decision in favor of the Claimant, he concluded that collateral estoppel did not preclude him from making a contrary determination because the Department had appealed the workers' compensation decision and because the issue before the WCJ was not identical to the issue before him. The Hearing Examiner recommended that the Department deny Claimant's request for Act 632 benefits and on January 3, 2003, the Department issued an order denying Claimant's request for Act 632 benefits. Claimant now petitions this Court for review.[3]

■■■ Claimant contends that the Department erred in finding that the inmate's touching of her buttocks did not constitute an abnormal working condition.[4] A claimant who alleges that she sustained a mental injury needs to prove by objective evidence that her injury is other than a subjective reaction to normal working conditions. *Martin v. Ketchum,* 523 Pa. 509, 568 A.2d 159 (1990). In so proving, the claimant must demonstrate either: (1) that actual extraordinary events occurred at work, which can be pinpointed in time, causing the trauma experienced by him or her; or (2) that abnormal conditions over a longer period of time caused the mental injury. *U.S. Airways v. Workers' Compensation Appeal Board (Long),* 756 A.2d 96 (Pa.Cmwlth.2000), *petition for allowance of appeal denied,* 565 Pa. 659, 771 A.2d 1293 (2001). Furthermore, because psychiatric injury cases are highly fact-sensitive, "in determining whether actual working conditions are abnormal, they must be considered in the context of the specific employment." *U.S. Airways,* 756 A.2d at 101.

■■■ In this case, Claimant alleges that the touching of her buttocks was an extraordinary event which should be considered an abnormal working condition. However, employees of the Department working inside the prison walls subject themselves to the dangers that come with being around the few people our society deem too dangerous to be free. It was because of this inherent danger of working in a state corrections facility that the General Assembly enacted Act 632 to "provide a full salary, not compensation, to employees in certain dangerous occupations who have been injured on the job." *Roman v. Department of Corrections,* 808 A.2d 304 (Pa.Cmwlth.2002).[5] Because of this con-

---

3. This Court's scope of review is limited to determining whether the Department's decision is supported by the evidence, whether it committed an error of law or whether it violated Claimant's constitutional rights. 2 Pa. C.S. § 704; *Roman v. Department of Corrections,* 808 A.2d 304 (Pa.Cmwlth.2002).

4. Whether findings of fact support a conclusion that a claimant has been exposed to abnormal working conditions is a question of law that is fully reviewable on appeal. *Wilson v. Workmen's Compensation Appeal Board (Aluminum Company of America),* 542 Pa. 614, 669 A.2d 338 (1996).

5. It is important to note that Act 632 benefits are not just provided for corrections officers but for any employee of a "correctional institution."

stant and heightened danger to Department employees, claimants seeking Act 632 benefits are held to a higher standard when alleging an abnormal working condition. *See City of Pittsburgh v. Logan,* 570 Pa. 500, 810 A.2d 1185 (2002) (holding that it will always be difficult for a person in a profession where dangerous conditions are normal to prove abnormal working conditions).[6] Because employees of the Department are exposed to the danger of physical and verbal abuse by an inmate, an inmate's touching of a food service instructor's buttocks, while reprehensible, does not rise to the level of an abnormal working condition.

 Finally, Claimant contends that the Department erred in classifying her in the same category as a corrections officer

with respect to the anticipation of touching by inmates. However, we find no basis for that assertion. In its conclusions of law, the Department found that "[g]uards and other employees of state correctional institutions are routinely touched by inmates." (Department's January 7, 2003 decision at 20).[7] In essence, the Department's conclusion stated that there was no difference between being a corrections officer or an "other employee" as both groups were susceptible to touching by inmates.[8] Regardless, as we stated, *supra,* Act 632 covers all employees of the Department, not just corrections officers, based on the reasoning that all employees are subject to the dangers inherent in working in a state corrections facility. Therefore, the fact that Claimant is a food service instructor

---

6. While *Logan* involved a police officer's claim for benefits under the Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637–638, this Court has stated that Act 632 benefits are virtually identical to those benefits afforded by the Heart and Lung Act; therefore, prior cases involving benefits under Act 632 and the Heart and Lung Act are all relevant to a determination regarding abnormal working conditions. *See Roman; Gribble v. Department of Corrections,* 711 A.2d 593 (Pa.Cmwlth.1998).

7. In its discussion, the Department also stated that "[i]t is a basic part of prison *employment* that some of these prisoners will, from time to time, act out and touch employees of the [Department]." (Department's January 7, 2003 decision at 17).

8. Claimant contends that the Department erred in finding that the issues in the Act 632 and workers' compensation proceedings were not identical and, therefore, concludes that collateral estoppel did not apply. However, in *Pennsylvania Department of Corrections/SCI–Waymart v. Workers' Compensation Appeal Board (Cantarella),* 835 A.2d 860, (Pa. Cmwlth. No. 667 C.D.2003, filed November 14, 2003), we reversed that determination of the Workers' Compensation Appeal Board.

Regardless, we note, though, that in *Schanz v. Com. of Pa., Bureau of Correction,* 52 Pa. Cmwlth. 300, 415 A.2d 978 (1980), this Court

refused to treat a workers' compensation decision granting benefits as *res judicata* and pre-emptive on a later decision of the Bureau of Corrections denying Act 632 benefits. In that case, we held that:

the decision of the workmen's compensation authorities within their jurisdiction is not conclusive as the criteria of Act 632, [which turns] upon whether the employee has been injured 'by an act of any inmate' or whether the disability 'prevents his return as an employee of such department . . . at a salary equal to that earned by him at the time of his injury.'

*Schanz,* 415 A.2d at 981–982. While, admittedly, *Schanz* addressed preclusion by *res judicata,* the reasoning is also applicable to collateral estoppel because the issue here likewise involves a distinction between workers' compensation benefits and Act 632 benefits based on whether the injury was caused by "an act of any inmate."

Finally, Claimant also contends that the Department erred in concluding that she intentionally placed herself in a position to be touched by an inmate out of the scope and course of her employment. After reviewing the Department's decision, we cannot find anywhere in the opinion where that conclusion is asserted. Quite simply, the Department found that the touching of Claimant's buttocks was not an abnormal working condition and, therefore, it was not compensable under Act 632.

who has contact with inmates and not a corrections officer is immaterial.

Accordingly, the Department's order is affirmed.

### ORDER

AND NOW, this *14th* day of *November,* 2003, the order of the Secretary of the Department of Corrections, No. PER–00372, dated January 07, 2003, is affirmed.

## DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority agrees with the Department of Corrections (Department) that the doctrine of collateral estoppel did not preclude the Department from re-litigating issues of law and fact in this Act 632[1] proceeding that already had been decided in the prior workers' compensation proceeding. Unlike the majority, I cannot agree with the Department.

The doctrine of collateral estoppel, or issue preclusion, prevents the re-litigation of issues of law or fact in a subsequent action when the following factors are demonstrated: (1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party or in privity with a party in the prior case and had a full and fair opportunity to litigate the issue; and (4) the determination in the prior proceeding was essential to the final judgment. *Benginia v. Workers' Compensation Appeal Board (City of Scranton),* 805 A.2d 1272 (Pa. Cmwlth.2002). When two pending actions involve the same issue, the final judgment first rendered in one of the actions becomes conclusive in the other action, regardless of which action was brought first. Restatement (Second) of Judgments 2d § 14 cmt. a (1982).

Here, Claimant filed a workers' compensation claim and an Act 632 claim, seeking compensation for a psychic injury. In considering Claimant's eligibility for benefits in the workers' compensation claim proceeding, the workers' compensation judge (WCJ) needed to determine whether Lynda Cantarella (Claimant) sustained a work-related injury in the course of her employment.[2] Because Claimant alleged that she sustained a psychic injury, the WCJ also needed to determine whether Claimant proved by objective evidence that her injury is other than a subjective reaction to normal working conditions. *See Martin v. Ketchum, Inc.,* 523 Pa. 509, 568 A.2d 159 (1990). On May 16, 2002, the WCJ decided that it is abnormal for a food service instructor to be touched on the buttocks by an inmate and awarded benefits.[3]

1. Act 632 provides that any employee of a state correctional institution who is injured during the course of employment by an act of any inmate shall be paid by the Commonwealth of Pennsylvania his or her full salary until the disability no longer prevents his or her return as an employee of the institution at a salary equal to that earned at the time of the injury. Section 1 of the Act of December 8, 1959, P.L. 1718, *as amended,* 61 P.S. § 951.

2. *See* Sections 301(a) and 301(c) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 411, 431.

3. The WCJ decided the abnormal working conditions issue as follows:
 [C]laimant's testimony that she was sexually assaulted remains unchallenged. The sexual assault is, per se, an abnormal working condition. Even if that were not true, the evidence shows that this is [the only] such assault in 25 years on an individual holding [C]laimant's position as a food service instructor. That fact is sufficient to establish that this assault is an abnormal working condition. The evidence also establishes that [C]laimant did not directly violate a work rule [by being alone with the inmate]. The defendant's own witness ac-

In considering Claimant's right to Act 632 benefits, the Department needed to determine whether Claimant sustained a work-related injury in the course of her employment by the act of an inmate.[4] An Act 632 claimant who alleges a psychic injury must prove by objective evidence that the injury is not just a subjective reaction to normal working conditions. *See City of Pittsburgh v. Logan*, 570 Pa. 500, 810 A.2d 1185 (2002); *Roman v. Department of Corrections*, 808 A.2d 304 (Pa. Cmwlth.2002). Thus, the Department needed to determine whether it is abnormal for a food service instructor to be touched on the buttocks by an inmate. Clearly, this issue is identical to the issue which the WCJ already had decided in Claimant's workers' compensation proceeding.[5]

Because the abnormal working conditions issue before the WCJ was identical to the abnormal working conditions issue before the Department, because there was a final judgment on the merits of this issue by the WCJ, because the parties in the two proceedings were identical and had a full and fair opportunity to litigate the issue, and because the determination was essential to the final judgment in the workers' compensation proceeding, the Department was estopped from relitigating the abnormal working conditions issue in the Act 632 proceeding. *Benginia.*

Accordingly, I would reverse.

knowledged that he acquiesced to the meeting between the [C]laimant and the patient/inmate and at no time did he instruct her not to meet with the patient/inmate. In fact, the employer's witness, Mr. McDonnell, confirmed that such meetings were a part of a food service instructor's job.
(WCJ's op. at 2, Claimant's brief, Attachment B.)

4. 61 P.S. § 951. The majority states that the issue in an Act 632 proceeding is different from the issue in a workers' compensation proceeding because, under Act 632, the Department must determine whether the injury is caused by the act of an inmate. (Majority op. at 7 n.8.) Although that is the ultimate issue in any Act 632 case, a sub-issue here, where Claimant alleges a psychic injury, is whether it is abnormal for a food service instructor to be touched on the buttocks by an inmate. That issue was decided in the workers' compensation proceeding.

5. In concluding otherwise, the Department stated that an Act 632 abnormal working conditions issue is not identical to a workers' compensation abnormal working conditions issue because a WCJ does not consider that Act 632 employees assume certain risks in taking dangerous jobs. (Hearing Examiner's op. at 16–17.) The Department is incorrect. In determining whether abnormal working conditions exist in a workers' compensation case, the WCJ *must* consider the working conditions in the context of the claimant's specific employment. *Heath v. Workers' Compensation Appeal Board (Pennsylvania Board of Probation and Parole)*, 811 A.2d 90 (Pa. Cmwlth.2002), *appeal granted*, 573 Pa. 700, 825 A.2d 1263 (2003). Thus, in a proceeding involving an Act 632 employee, a WCJ does consider the fact that the Act 632 employee has taken a job that involves certain risks.

The Department also concluded that, because the workers' compensation decision had been appealed, collateral estoppel does not apply in this case. However, this is contrary to this court's holding in *Yonkers v. Donora Borough*, 702 A.2d 618 (Pa.Cmwlth. 1997) (stating that a pending appeal does not destroy the finality of a decision for purposes of collateral estoppel), and the Department concedes as much in its brief. (*See* Department's brief at 12 n.1.)