**PENNSYLVANIA DEPARTMENT OF CORRECTIONS/SCI Waymart, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CANTARELLA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 8, 2003.

Decided Nov. 14, 2003.

Brian M. Hemak, Scranton, for petitioner.

Cal A. Leventhal, Honesdale, for respondent.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, and SIMPSON, Judge.

OPINION BY Judge PELLEGRINI.

The Pennsylvania Department of Corrections and the State Correctional Institute at Waymart (SCI–Waymart) (collectively, Employer) petition for review of a Workers' Compensation Appeal Board (Board) order affirming the decision of the Workers' Compensation Judge (WCJ) granting Lynda Cantarella's (Claimant) claim petition for workers' compensation benefits because she was totally disabled

as a result of abnormal working conditions that caused post-traumatic stress disorder.

Claimant worked for Employer as a food service instructor. Because part of her job duties required her to instruct inmates on how to perform certain tasks and assign them various job duties, at times she was alone with inmates in the dining room. On April 8, 2001, an inmate asked to meet with Claimant privately. Because, during her five years working for Employer, Claimant had often been approached by inmates asking to speak with her privately about matters concerning the control of the inmates at the institution, she asked her supervisor, Michael McDonnell (McDonnell), for permission to meet with the inmate. Although McDonnell had reservations about the private meeting, he, nonetheless, acquiesced if certain precautions were met. During Claimant's meeting with the inmate, the inmate reached over and started rubbing her buttocks. Claimant jumped up, yelled at the inmate and left the room. She immediately reported the incident to Lieutenant Gorel's office and McDonnell and filled out a misconduct form.

Claimant tried to return to work the following two days after the incident, but each time left early because of her anxiety around the inmates. She sought treatment for her anxiety from Ronald Talaga, M.D. (Dr. Talaga), a family physician, who originally diagnosed her as suffering from a situational anxiety reaction, but then later changed his diagnosis to post-traumatic stress syndrome. On May 18, 2001, Claimant filed a claim petition alleging that she sustained a work injury on April 8, 2001, in the nature of a post-traumatic stress disorder that manifested itself on April 11, 2001. Employer filed an answer denying the allegation, arguing, *inter alia*,

that the April 8, 2001 incident was not an abnormal working condition, and, therefore, Claimant's resulting psychiatric condition was not compensable.

Before the WCJ, Claimant testified that after the April 8, 2001 incident, she finished the day at work but felt she was on "automatic pilot" the entire time. Claimant testified that as a result of the incident, she was in imminent fear of bodily harm or death. After leaving work on April 10, 2001, Claimant testified that she remained out of work until August 11, 2001, at which time she returned to a position with Employer in the records department with minimum inmate contact; however, that position was only available to her for 90 days. After the availability of that position expired, Claimant stated that she returned to her old position as a food service instructor on November 11, 2001, with restrictions that limited her inmate contact. However, she only stayed at that position until December 6, 2001, when she left because she was very tense while working as well as trying to act normal and not look scared when around inmates. Claimant testified that she had not worked since that time. She also testified that she had anxiety and difficulty sleeping and continued to have flashbacks of the incident daily.

Claimant testified that prior to the incident with the inmate, she was not aware of any person working as a food preparer or instructor in the service department ever having been touched by an inmate on their buttocks before.[1] Despite never having been touched in that manner before, Claimant admitted that during her five years at SCI–Waymart, she had been physically assaulted by inmates approximately five times, and that she knew of

---

1. Evidence was submitted showing that this was the only such assault in 25 years on an individual holding the position of a food service instructor.

other employees who had been physically assaulted during that time also. She also acknowledged that during her time with Employer, inmates had made sexually offensive comments towards her. When asked about the composition of the prison population at SCI–Waymart, Claimant testified that the majority of the inmates were sexual offenders. Finally, Claimant admitted that there was a constant threat of attacks on employees and that all employees underwent defensive training.

At the hearings, Claimant also submitted the testimony of Joseph Scalzo, a co-worker, and Dr. Talaga. Employer presented the testimony of McDonnell. Accepting the testimony of Claimant and Dr. Talaga as credible, the WCJ found that the April 8, 2001 incident was an abnormal working condition, and that Claimant had sustained a work-related injury, i.e., post-traumatic stress disorder as a result. The WCJ found that the incident was abnormal because sexual assault was, *per se,* an abnormal working condition, and no such assault had occurred in the 25 years prior to the incident involving Claimant. Employer appealed to the Board, which affirmed the WCJ's decision. Employer now petitions this Court for review.[2]

■■■ In its appeal, Employer contends that the Board erred in affirming the WCJ's conclusion that the incident constituted an abnormal working condition.[3] A claimant who alleges that she sustained a mental injury needs to prove by objective evidence that her injury is other than a subjective reaction to normal working conditions. *Martin v. Ketchum,* 523 Pa. 509, 568 A.2d 159 (1990). In so proving, the claimant must demonstrate either: (1) that actual extraordinary events occurred at work, which can be pinpointed in time, causing the trauma experienced by her; or (2) that abnormal conditions over a longer period of time caused the mental injury. *U.S. Airways v. Workers' Compensation Appeal Board (Long),* 756 A.2d 96 (Pa. Cmwlth.2000), *petition for allowance of appeal denied,* 565 Pa. 659, 771 A.2d 1293 (2001). Furthermore, because psychiatric injury cases are highly fact-sensitive, "in determining whether actual working conditions are abnormal, they must be considered in the context of the specific employment." *U.S. Airways,* 756 A.2d at 101. Finally, in determining whether certain conditions are abnormal, our Supreme Court has considered whether the conditions were foreseeable or could have been anticipated. *See City of Philadelphia v. Civil Service Commission of the City of Philadelphia and Howard Ryder,* 565 Pa. 265, 772 A.2d 962 (2001) (finding that a police officer's involvement in an armed standoff did not rise to the level of an abnormal working condition because an armed confrontation could have been anticipated in the course of an officer's duties).

■■■ In this case, Claimant alleged an actual extraordinary event which the WCJ considered to be abnormal based on his finding that no food service instructor had been touched on the buttocks in 25 years, making that touching an abnormal working condition. However, Claimant's own testi-

---

2. In reviewing a determination of the Board, our scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *C. Hannah & Sons Construction v. Workers' Compensation Appeal Board (Days),* 784 A.2d 860 (Pa.Cmwlth.2001).

3. Whether findings of fact support a conclusion that a claimant has been exposed to abnormal working conditions is a question of law that is fully reviewable on appeal. *Wilson v. Workmen's Compensation Appeal Board (Aluminum Company of America),* 542 Pa. 614, 669 A.2d 338 (1996).

mony belies that touching was abnormal: Claimant testified that she had been assaulted by inmates in the past; that other employees had been physically assaulted; that inmates made comments of a sexual nature towards her; that the majority of prisoners housed at SCI–Waymart were sexual offenders; that there was a constant threat of attacks on employees; and that all employees underwent defensive training to be able to defend themselves. Because "assaults" were anticipated by Claimant and Employer, an inmate's touching of a food service instructor's buttocks, while reprehensible, does not rise to the level of an abnormal working condition.[4]

Accordingly, the order of the Board is reversed.[5]

### ORDER

AND NOW, this *14th* day of *November,* 2003, the order of the Workers' Compensation Appeal Board, No. A02–1591, dated February 26, 2003, is reversed.

### DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. Although there has not been an indecent assault upon a food service instructor in twenty-five years at SCI–Waymart, the majority concludes that an indecent assault, which is a crime in this Commonwealth, does *not* constitute an abnormal working condition when it

happens to a food service instructor working at a minimum security prison for the Pennsylvania Department of Corrections (Employer). In other words, because it is *normal* for food service instructors at SCI–Waymart to be victims of the crime of indecent assault, Lynda Cantarella's (Claimant) psychic injury from the indecent assault that occurred in this case is merely a subjective reaction to a normal working condition. I cannot agree.

### I.  Abnormal Working Conditions

#### A.  The Law

To recover workers' compensation benefits for a psychic injury, a claimant has the burden of proving by objective evidence that he or she has suffered a psychic injury and that such injury is other than a subjective reaction to normal working conditions. *Martin v. Ketchum, Inc.,* 523 Pa. 509, 568 A.2d 159 (1990). To meet this burden, the claimant must demonstrate either (1) that actual extraordinary events occurred at work, which can be pinpointed in time, causing the trauma experienced by him or her, or (2) that abnormal conditions over a longer period of time caused the mental injury. *US Airways v. Workers' Compensation Appeal Board (Long),* 756 A.2d 96, 101 (Pa.Cmwlth.2000), *appeal denied,* 565 Pa. 659, 771 A.2d 1293 (2001).

"Objective evidence which is corroborative of an employee's perception is necessary in determining the existence of abnor-

---

4. We also disagree with the WCJ's finding that the inmate's touching of Claimant's buttocks was, *per se,* an abnormal working condition. However, neither the WCJ nor Claimant set forth any authority demonstrating that an "indecent assault" is, *per se,* an abnormal working condition. Moreover, a finding that a specific scenario is, *per se,* an abnormal working condition disregards the fact that such conditions are to be analyzed on a case-by-case basis in the context of each claimant's specific employment.

5. Because we have held that Claimant was not exposed to an abnormal working condition which completely disposes of this case, we need not address Employer's other arguments that the Board issued a decision contrary to the competent evidence and that it erred in failing to dismiss Claimant's petition for review under the third party exception in § 301(c)(1) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(1).

mal working conditions. An employee's testimony alone on this issue is not sufficient." *Volterano v. Workmen's Compensation Appeal Board,* 536 Pa. 335, 346, 639 A.2d 453, 458 (1994). However, corroborative evidence is not required when an employee is describing actual events that have occurred and the workers' compensation judge finds that such events did occur. *Donovan v. Workers' Compensation Appeal Board (Academy Medical Realty),* 739 A.2d 1156, 1163 (Pa.Cmwlth.1999), *appeal denied,* 563 Pa. 678, 759 A.2d 924 (2000).

In addition, "psychic injury cases are highly fact-sensitive and for actual work conditions to be considered abnormal, they must be considered in the context of the specific employment." *Wilson v. Workmen's Compensation Appeal Board (Aluminum Co. of America),* 542 Pa. 614, 624, 669 A.2d 338, 343 (1996). To establish an abnormal working condition in a high stress working environment, a claimant must show that her work performance was unusually stressful for that kind of job or that an unusual event made the job more stressful than it had been. *Clowes v. Workmen's Compensation Appeal Board (City of Pittsburgh),* 162 Pa.Cmwlth.583, 639 A.2d 944 (1994), *appeal denied,* 543 Pa. 697, 670 A.2d 144 (1995). Whether the findings of fact support a conclusion that the claimant has been exposed to abnormal working conditions is a question of law that is fully reviewable on appeal. *Id.*

### B. The Facts

Here, Claimant suffers from post-traumatic stress syndrome as a result of an actual extraordinary event at work, the commission of the crime of indecent assault against her.[1] The WCJ found that the event occurred. (WCJ's Findings of Fact, No. 7.) The WCJ also considered the event in the context of Claimant's specific employment and found that "[C]laimant was not aware of *any* person working in ... the service department *ever* having been sexually assaulted by an inmate." (WCJ's Findings of Fact, No. 9) (emphasis added). In fact, the WCJ found that "there had not been a sexual assault in 25 years on anyone who had worked as a food service instructor."[2] (WCJ's Findings of Fact, No. 15.) Finally, the WCJ found that being the victim of the crime of indecent assault made Claimant's job as a food service instructor more stressful than it had been. (*See* WCJ's Findings of Fact, Nos. 10–12.) Based on these findings of fact, I submit that the WCJ properly concluded that the indecent assault on Claimant by an inmate constituted an abnormal working condition and that Claimant was entitled to benefits for her resulting psychic injury.

### II. The Majority View

In reversing the Workers' Compensation Appeal Board's (WCAB) affirmance of the WCJ's decision, the majority prefers to make its own findings of fact from evidence given no weight by the WCJ.[3] The majority states:

---

1. Indecent assault is the touching of the sexual or other intimate parts of a person for the purpose of arousing or gratifying sexual desire without the other person's consent. Sections 3101 and 3126 of the Crimes Code, 18 Pa.C.S. §§ 3101, 3126.

2. This finding was based on the testimony of an employee who had worked at SCI–Waymart for twenty-five years. (R.R. at 87a.)

3. In making its own findings of fact and reweighing the evidence in the record, the majority exceeds this court's limited scope of review. Indeed, the appellate role in a workers' compensation case is not to re-weigh the evidence or review the credibility of the witnesses; rather, the appellate court must simply determine whether the WCJ's findings have the requisite measure of support in the record as a whole. *Bethenergy Mines, Inc. v.*

Claimant's own testimony belies that touching was abnormal: Claimant testified that she had been assaulted by inmates in the past; that other employees had been physically assaulted; [4] that inmates made comments of a sexual nature towards her; [5] that the majority of prisoners housed at SCI–Waymart were sexual offenders; [6] that there was a constant threat of attacks on employees; [7] and that all employees underwent defensive training to be able to defend themselves.[8]

(Majority op. at 863.) These are not findings of fact of the WCJ.

Moreover, in considering Claimant's testimony, the majority does not give Claimant the benefit of the most favorable inferences to be drawn from that testimony.[9] For example, the majority states that Claimant had been assaulted by inmates in the past. However, Claimant's testimony was that she had been "touched" by inmates, but not "in a harmful fashion."

(R.R. at 65a–66a.) There is a great difference between an unwelcome touching, which may be intentional or unintentional,[10] and the *crime* of "assault," which involves an attempt to cause bodily injury. *See* section 2701(a)(1) of the Crimes Code, 18 Pa.C.S. § 2701(a)(1). Claimant testified that *no* inmate *ever* touched her in a *harmful* fashion. Thus, according to Claimant, harmful touching *was* abnormal.

Accordingly, unlike the majority, I would affirm.

---

*Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992).

4. Claimant's testimony was that, using her definition of assault as "whenever an inmate touches you in any fashion," *one* other employee had been assaulted by an inmate. (R.R. at 67a.) Claimant did not indicate whether that employee was a food service instructor.

5. Claimant testified that it was "unusual" for inmates to make sexually offensive comments to her. (R.R. at 65a.)

6. It is true that Claimant presented such testimony. (R.R. at 62a.) However, Claimant's supervisor testified that the prison population at SCI–Waymart is 1,252, and 1,150 inmates are level two minimum security prisoners, the least dangerous category of inmate. (R.R. at 28a, 108a.) Claimant's supervisor also testified that, although there are a lot of sex offenders at SCI–Waymart, "they will be doing [the] tail end of their sentence[s]" after being downgraded from level five to level two. (R.R. at 109a.)

7. Actually, when Claimant refused to agree that assaults on employees are not unusual at SCI–Waymart, Claimant's counsel interrupted Claimant's testimony and *stipulated* that there is a constant threat of attacks on employees at SCI–Waymart. (R.R. at 64a.)

8. Claimant testified that employees "take defensive tactic training once a year ... for one day." (R.R. at 25a.)

9. The party who prevailed before the WCJ, Claimant in this matter, is entitled to the benefit of the most favorable inferences to be drawn from the evidence in the record. *Fulton v. Workers' Compensation Appeal Board (School District of Philadelphia)*, 707 A.2d 579 (Pa.Cmwlth.1998).

10. Claimant explained that if "an inmate grabs an I.V. out of your hand and touches your finger ... it's an assault...." (R.R. at 66a.) In fact, "[w]henever an inmate touches you in any fashion, it's considered an assault." (R.R. at 67a.)