811 A.2d 90 (2002)
Kim HEATH, Petitioner,
v.
WORKERS' COMPENSATION APPEAL BOARD (PENNSYLVANIA BOARD OF PROBATION AND PAROLE), Respondent.
Commonwealth Court of Pennsylvania.
Submitted on Briefs June 14, 2002.
Decided November 25, 2002.
*92 Eugene Mattioni, Philadelphia, for petitioner.
Audrey J. Copeland, Newtown Square, for respondent.
BEFORE: FRIEDMAN, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.
*91 OPINION BY Senior Judge FLAHERTY.[1]
Kim Heath (Claimant) petitions for review of a decision of the Workers' Compensation Appeal Board (Board) which reversed the decision of the Workers' Compensation Judge (WCJ) granting Claimant benefits for a psychological injury that she alleged arose from abnormal working conditions. We affirm the Board.
Claimant was employed by the Pennsylvania Board of Probation and Parole (Employer) as a parole agent at Graterford Prison (Graterford). Claimant's immediate supervisor at Graterford was Calvin Ogletree, Jr. (Ogletree), whose immediate supervisor was James Newton (Newton). In October of 1997, Newton asked Claimant to join him at a casting call for an Oprah Winfrey movie, thus beginning a course of conduct whereby Newton subjected Claimant to attention she did not seek and sought to discourage. Claimant declined Newton's invitation, but within the week he invited Claimant to a concert at which Newton's brother would be performing. Again, Claimant declined. Shortly thereafter Newton telephoned Claimant to invite her to another show; Claimant again declined. Newton then proceeded to discuss his personal issues and problems, at which point Claimant ended the call. In January of 1998, Claimant found an envelope on her desk with a ticket for another show of Newton's brother. Claimant spoke to Newton's brother, who also worked at Graterford, and he explained that Newton asked him to give her the ticket. Claimant did not attend the show.
Newton's conduct did not abate. Once, also in January of 1998, a love song came on the radio at work, prompting Newton to move up close to Claimant and express his opinion that it was a "sexy, sweet" song. Reproduced Record 27a. Newton also developed such habits as standing behind Claimant at her desk and making sucking sounds and sitting near Claimant's desk and staring at her. When Claimant asked if there was something he wanted, Newton would start a personal conversation. Claimant would then advise him that she was busy with work in an effort to end the conversation. On one occasion, Newton asked Claimant for her home address and telephone number. R.R. 29a. Claimant responded that her supervisor, Ogletree, had this information if it were ever needed.
Following Claimant's continued rebuffs of these overtures, Newton began to burden Claimant with additional work assignments, which required her to put aside her normal caseloads and to fall behind. When informed, Ogletree expressed surprise to learn that Newton was giving *93 assignments to Claimant without his knowledge and stated that he would talk to Newton about it. R.R. 29a-30a.
On February 10, 1998, Newton asked Claimant to attend a meeting in his office, which was not located at the prison, on Friday, February 13, 1998. He refused to respond to Claimant's inquiry about the meeting's purpose; Claimant objected and stated that she might bring union representation to the meeting. Newton responded by telling her that union representation was not necessary. When Claimant persisted with her inquiry, Newton became irate. R.R. 30a-31a. Claimant complained to Ogletree, who agreed to speak to Newton.
On Thursday, February 12, 1998, near the end of the day, Newton gave Claimant a memo ordering her to attend the meeting at his office the following day and that union representation would not be permitted. Newton did not advise Ogletree of the meeting, but Claimant did. On February 13, 1998, Claimant went to the meeting accompanied by Ogletree and her union president, who was not allowed into Newton's office. At the meeting, Newton told Claimant that he wanted the meeting so he could tell her that she was doing a great job. When Claimant brought up the subject of Newton's harassment of her, Newton refused to respond and abruptly ended the meeting. R.R. 33a-36a.
On or about February 18, 1998, Claimant filed a grievance with her union regarding Newton's harassment. Within a week, Newton tried to lure Claimant into Ogletree's empty office on the stated pretext that she needed a second photo identification card; there was no such need. R.R. 39a-40a. That day, Claimant spoke to the Employer's Affirmative Action Officer, LaDelle Ingram (Ingram), and shortly thereafter, on March 4, 1998, Claimant presented Ingram with a written complaint of sexual harassment against Newton. Ingram informed Newton that he was not to have any contact with Claimant. Despite this warning, Newton called Claimant's direct line at work on at least two separate occasions. R.R. 49a.
Soon after presenting her sexual harassment complaint, Claimant testified that she received a written warning from an inmate that her life was in danger. Claimant attempted to admit this note into evidence, but the Employer registered a hearsay objection. The WCJ requested some foundation testimony before ruling on the objection, and Claimant testified that the note came through interagency mail, which inmates can use to send mail to parole officers. Claimant stated that after receiving the warning she asked the inmate how another inmate could hurt her, and the inmate responded that it was the corrections officers that were out to get her. The WCJ sustained Employer's hearsay objection and noted that "at this point I don't have enough to have this go to the employee's conduct. You may have to take the testimony of the inmate at this point to get that in." R.R. 48a. Claimant's attorney stated that he was going to attempt to obtain more evidence. However, Claimant did not present any further evidence in this regard. Some time later, Claimant sought a job transfer to a different location, and on April 1, 1998, Claimant was told to report to a Philadelphia District Office. She did, but for the next month, she lacked a desk and had almost no work. Further, she was not issued a weapon, as required by Employer's policy. R.R. 54a-55a.
Claimant began experiencing anxiety, which was manifested in chest pains, heart palpitations and anxiety attacks. Claimant contacted a State Employee Assistance Program and was referred to a psychologist, Suzanne Baxter, M.A. (Baxter) for *94 treatment. Baxter saw Claimant the next day and testified that she put her out of work due to acute stress disorder, caused by a feeling of lack of support from her employer and failure to protect her from Newton's unwanted advances. Within a week, Claimant also saw Richard Watson, D.O. (Dr. Watson), an employer approved "panel" physician. Dr. Watson agreed with Baxter's diagnosis of acute stress disorder and her direction that Claimant not return to work due to an undue amount of stress. R.R. 138a-139a.
Employer refused Claimant workers' compensation benefits for the stated reason that Claimant did not suffer a work-related injury and did not give notice of her alleged injury to employer within one hundred and twenty days.[2] On or about June 24, 1998, Claimant filed a claim petition alleging that as of May 1, 1998, she sustained a disabling psychological injury in the form of stress anxiety while in the course of her employment as a parole agent, which resulted from the sexual harassment by Newton and the retaliatory acts of her employer. On August 10, 1998, Employer filed an answer denying the allegations contained in the claim petition.
On November 6, 1998, Employer offered Claimant a position at a new facility in Chester as one of two institutional parole agents. On December 11, 1998, Employer sent Claimant a release to sign as a condition to being allowed to return to work. This release required Claimant to give up all claims against Employer, including her pending workers' compensation claim and sexual harassment claims. Claimant refused to sign the release. R.R. 410a-413a.
By letter dated January 4, 1999, Employer informed Claimant that she had to return to work by January 11, 1999 or risk termination. Claimant returned to work as instructed and reported to her assigned supervisor, Bonnie Ferguson (Ferguson) who informed Claimant she had no knowledge that Claimant would be reporting for work. Claimant testified that she was given very few work assignments. After reviewing Claimant's activity sheets, which indicated that she had no work, Ferguson instructed Claimant not to make such entries because they would jeopardize her ability to receive her paycheck. R.R. 892a. Another parole agent, Stanley Webb (Webb), verbally assaulted Claimant, screaming at her that if she did not like her job, then she needed to leave. R.R. 878a.
By February 5, 1999 Claimant's anxiety again forced her to leave her new position with Employer. On February 8, 1999, Claimant's treating psychologist, Baxter, wrote to Claimant's supervisor and informed her that Claimant was unable to continue work due to her medical condition. By letter dated March 3, 1999, Employer directed Claimant to: (1) return to work by March 15, 1999; (2) apply for disability retirement; or (3) resign from her employment. Claimant, through counsel, sent Employer a response on March 11, 1999 stating that due to her on-going medical condition and her unwillingness to retire or resign from her employment, she would not be returning to work on March 15, 1999. On April 16, 1999, Claimant's employment was terminated.
In a series of hearings before the WCJ on her 1998 claim petition, Claimant testified on her own behalf and submitted the deposition transcripts of Baxter and Dr. Watson. Claimant also submitted the testimony of three factual witnesses: Rennin *95 McCrey, Gloria Hamilton and Ogletree. Employer, in response, presented the testimony of Newton, Ferguson and Webb; it also submitted the deposition of Jon Bjornson, M.D. (Dr. Bjornson), a psychiatrist.
On March 6, 2001, the WCJ found that Claimant had sustained a work-related injury as a result of abnormal working conditions. On February 25, 2002, the Board reversed. It reasoned that "Claimant provided no corroborative testimony that these occurrences were actual incidents of harassment. She presented no witnesses to testify that they witnessed the incidents and that they too believed Claimant was being harassed by Mr. Newton." Board's Decision at 9. With regard to the other conditions that Claimant alleges contributed to her mental injury, the Board stated that the WCJ "also concluded that because Claimant was placed into a different job after she requested a transfer where she was given few assignments and no desk or office, this was also an abnormal working condition. As we believe this happens in the work place on occasion, this too was not an abnormal working condition." Board's Decision at 10. Claimant now appeals seeking reversal of this order.[3]
On appeal, Claimant argues that the Board erred as a matter of law by: 1) concluding that she failed to produce corroborating evidence of her sexual harassment, 2) concluding that she was not exposed to abnormal working conditions and specifically failing to recognize that sexual harassment by a supervisor constitutes an abnormal working condition, 3) concluding that the other conditions to which she was exposed were not abnormal and specifically failing to consider the death threat as an abnormal working condition.
To recover workers' compensation benefits for a psychic injury, a claimant has the burden of proving by objective evidence that he or she has suffered a psychic injury and that such injury is other than a subjective reaction to normal working conditions. Martin v. Ketchum, Inc., 523 Pa. 509, 568 A.2d 159 (1990). To meet this burden, the claimant must demonstrate either (1) that actual extraordinary events occurred at work, which can be pinpointed in time, causing the trauma experienced by him or her, or (2) that abnormal conditions over a longer period of time caused the mental injury. US Airways v. Workers' Compensation Appeal Board (Long), 756 A.2d 96, 101 (Pa.Cmwlth.2000). "Objective evidence which is corroborative of an employee's perception is necessary in determining the existence of abnormal working conditions. An employee's testimony alone on this issue is not sufficient." Volterano v. Workmen's Compensation Appeal Board, 536 Pa. 335, 346, 639 A.2d 453, 458 (1994). However, corroborative evidence is not required when an employee is describing actual events that have occurred and the workers' compensation judge finds that such events did occur. Donovan v. Workers' Compensation Appeal Board (Academy Medical Realty), 739 A.2d 1156, 1163 (Pa.Cmwlth.1999). In addition, "psychic injury cases are highly fact-sensitive and for actual work conditions to be considered abnormal, they must be considered in the context of the specific employment." Wilson v. Workmen's Compensation Appeal Board (Aluminum Co. of America), 542 Pa. 614, 624, 669 A.2d 338, 343 (1996). Whether the findings of *96 fact support a conclusion that the claimant has been exposed to abnormal working conditions is a question of law that is fully reviewable on appeal. Id.
Claimant bases her claim of mental injury on the acts of sexual harassment which were intentionally directed at her by a fellow employee because of reasons personal to him. She does not claim that his actions were directed against her because of her performance or lack of performance as an employee or otherwise because of her position as a parole agent. Her allegations are limited to sexual harassment that resulted in a mental injury. It is well-settled that injuries that arise from personal conduct at the workplace are not compensable. See Kohler v. McCrory Stores, 532 Pa. 130, 615 A.2d 27 (1992) and Abbott v. Anchor Glass Container Corporation, 758 A.2d 1219, 1223 (Pa.Super.2000). Section 301(c)(1) of the Act provides, in relevant part, that:
The term "injury arising in the course of his employment," as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment ...
77 P.S. § 411(1) (emphasis added). Although Employer does not argue that this "personal animus" exception applies to this case, Section 301(c)(1) addresses this Court's subject matter jurisdiction. Because subject matter jurisdiction cannot be waived, we may raise this issue on our own motion. See Scholastic Services Organization, Inc. v. Commonwealth, 721 A.2d 74, 76 (1998). Additionally, although the Board did not contemplate whether Section 301(c)(1) applies to this case, this Court may affirm the order of a lower tribunal if the result reached is correct without regard to the grounds relied upon by that tribunal. Moorhead v. Crozer Chester Medical Center, 564 Pa. 156, 159, 765 A.2d 786, 787 n. 2 (2001).
It is noteworthy that when employees have sued employers in state and federal courts for sexual harassment that has occurred in the workplace, employers have attempted to remove these actions to an administrative proceeding before a workers' compensation judge by asserting that the harassment was work-related and that therefore the Act provided the sole remedy for these workers' claims.
In Pennsylvania, these cases have been appealed to the Superior Court as tort actions rather than this Court, and the Superior Court has consistently held that the third party exception of Section 301(c)(1) operates to take these cases out of the realm of workers' compensation law.
For example, in Schweitzer v. Rockwell International, 402 Pa.Super. 34, 586 A.2d 383, 385 (1991), petition for allowance of appeal denied, 529 Pa. 635, 600 A.2d 954 (1991), the Superior Court reversed a grant of summary judgment for the employer and held that, pursuant to Section 301(c)(1) of the Act, the employee was not required to pursue a remedy against her employer under the Workers' Compensation Act because the sexual harassment was personal in nature and not part of the proper employer/employee relationship.
Additionally, we also note that when employees have sued employers under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., for injuries occurring as a result of sexual harassment in the workplace, the Federal District Courts of Pennsylvania have consistently rejected the defense of employers to these suits that the employee's exclusive remedy is under the Workers' Compensation Act. For example, in Dunn v. Warhol, Pennsylvania Hospital, 778 F.Supp. 242 *97 (E.D.Pa.1991), the Court, relying on Schweitzer, stated that it "cannot conceive of an instance of sexual harassment of an employee by an employer or others in the workplace which properly could be characterized as employment related." Id. at 244. In another Title VII case, the Court in Barb v. Miles, Inc., 861 F.Supp. 356 (W.D.Pa.1994) held that "[w]hen the highest state court has not indicated it would rule otherwise, the federal courts must give significant, though not conclusive, weight to the state's intermediate appellate courts' decisions. Gulick v. Chia S. Shu, M.D., P.C., 618 F.Supp. 481 (M.D.Pa. 1985). The court is satisfied that the Pennsylvania Superior Court's analysis and holding in Schweitzer v. Rockwell International, 402 Pa.Super. 34, 586 A.2d 383 (1990), accurately reflects the correct approach to the issue." Id. at 360. See also Gruver v. Ezon Products, Inc., 763 F.Supp. 772 (M.D.Pa.1991).
The parties in this case are Claimant, who is the employee, the Board of Probation and Parole, who is the employer and Newton, Claimant's co-employee who is the third party alleged harasser. Even if we accept as true Claimant's allegation that this harassment did in fact occur and that there was corroborative evidence to support this claim, we believe, as did the Court in Schweitzer, that when a co-employee, or third party, sexually harasses an employee, any resulting mental injury is not compensable under the Act because Section 301(c)(1) operates to remove any claim for that injury from the purview of the Workers' Compensation Act. We reach this conclusion because any sexual harassment that Claimant did experience was personal, not work-related, and certainly not part of the proper employer/employee relationship. Thus, any injury that Claimant suffered as a result of this harassment would not be work-related and thus not compensable under the Act. The Board concluded that Claimant's claim was not compensable because she failed to provide corroborative evidence to support this claim. Even though we believe that Claimant's claim was not compensable for a different reason, we may still affirm the decision of the Board. Moorhead. Accordingly, we affirm the decision of the Board in this regard.[4]
As to the other conditions that Claimant alleges contributed to her mental injury, these conditions either were not abnormal or Claimant failed to present evidence to corroborate that these conditions existed. Specifically, with regard to the warning that Claimant stated she received from an inmate which indicated that corrections officers were after her, this note was properly rejected by the WCJ as hearsay, and Claimant presented absolutely no other evidence, such as the testimony of the inmate, to corroborate that this actually occurred or that her fellow employees were actually conspiring against her. The WCJ mentioned Claimant's testimony regarding this note, but made no finding that corrections officers actually were conspiring against Claimant. In fact, the WCJ stated that without further evidence, he did not "have enough to have this go to the employee's conduct." R.R. 48a. As such, because there is no proof that this threat was an actual event that occurred and the WCJ made no such *98 finding, Claimant was required to provide corroborate evidence in this regard. Donovan. Because Claimant has failed to produce such evidence, she has failed to prove that this was an abnormal working condition. Volterano.
As to Claimant's allegations that the other conditions of her job were abnormal, i.e. being moved to a less desirable position, prior case law indicates that these conditions were not abnormal. In Wilson, our Supreme Court stated that "[a]n employee's perception that a temporary job is demeaning is not a basis for awarding workers' compensation benefits. An employer does not have to place an employee in a position commensurate with the position or status that the employee previously held or bear the risk of a workers' compensation claim for psychic injury." Id. at 629, 669 A.2d at 346.
We find Wilson instructive in this matter. Employer, in an effort to return Claimant to work, found her a position under the supervision of Ms. Ferguson. Claimant testified that she wasn't given much work to do at this job. The evidence indicates that Employer was attempting to accommodate Claimant and return her to work, not trying to punish her. To hold that an employer creates an abnormal working condition by returning a claimant to another job without direct evidence that the employer's motives were solely for harassment of the claimant would be unwise and contrary to the goal of returning claimants to gainful employment. Additionally, Claimant only attempted to perform this position for less than a month. Therefore, Claimant certainly did not meet her burden of proving that she experienced abnormal working conditions of a longer duration. US Airways. As such, we do not believe that this aspect of Claimant's employment was abnormal. Therefore, Claimant would not be entitled to workers' compensation benefits for any mental injury suffered as a result of these conditions.
Accordingly, the order of the Board is affirmed.

ORDER
AND NOW, November 25, 2002, the order of the Workers' Compensation Appeal Board docketed at A01-0790 and dated February 25, 2002 is hereby AFFIRMED.
NOTES
[1] This case was reassigned to the author on October 8, 2002.
[2] Section 311 of the Workers' Compensation Act (Act), Act of June 2, 1915 P.L. 736, as amended, 77 P.S. § 631, requires that an employee give notice to an employer within 120 days of a work-related injury.
[3] Our scope of appellate review is limited in workers' compensation proceedings to a determination of whether constitutional rights have been violated, an error of law has been committed, or any findings of fact are not supported by substantial evidence. Volterano v. Workmen's Compensation Appeal Board, 536 Pa. 335, 639 A.2d 453 (1994).
[4] Claimant also argues that the Board erred by failing to address the fact that Employer attempted to condition her return to work upon her signing a release of all legal claims. We fail to see how this incident alone could be considered to be so abnormal so as to entitle Claimant to the receipt of workers' compensation benefits. Moreover, as set forth above, these potential legal claims arising from the alleged sexual harassment that Claimant was asked to waive are beyond the subject matter jurisdiction of this Court.