COMMONWEALTH of Pennsylvania, Appellee

v.

Nathan G. SCHMIDT, Appellant.

Superior Court of Pennsylvania.

Argued Aug. 30, 2006.

Filed Feb. 23, 2007.

Reargument Denied April 18, 2007.

Christian A. Lovecchio, Williamsport, for appellant.

Gerald P. Morano, Asst. Dist. Atty., for the Com., appellee.

BEFORE: LALLY–GREEN, TODD and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Nathan G. Schmidt appeals from an order entered on October 26, 2005, in the Court of Common Pleas, Union County, denying his motion to dismiss criminal information. Upon review, we affirm the October 26, 2005 order.

¶ 2 The facts and procedural history are stated as follows. On June 25, 2003, the Pennsylvania Office of Attorney General interrogated Christine Brumbach in con-

nection with a conspiracy to deliver controlled substances. Ms. Brumbach implicated Appellant in this conspiracy and, consequently, on September 17, 2003, the 19th Statewide Investigating Grand Jury issued Presentment #37 recommending that Appellant be charged with, *inter alia,* possession of a controlled substance,[1] possession with intent to deliver a controlled substance,[2] and criminal conspiracy.[3] On October 6, 2003, the Pennsylvania Office of Attorney General filed a criminal complaint against Appellant in Northumberland County. This criminal complaint charged Appellant with possession with intent to deliver, delivery of a controlled substance, and criminal conspiracy. These offenses were alleged to have occurred between late 2002 and July 2003, at various locations in Northumberland, Snyder, Union, and surrounding counties in Pennsylvania. Appellant agreed to cooperate with the Pennsylvania Attorney General's Office, and, on November 19, 2003, Appellant gave a complete statement regarding his involvement. At a second meeting with the Pennsylvania Attorney General's Office on March 15, 2004, there was a breakdown of the plea negotiations.

¶ 3 On June 2, 2004, Appellant filed a Writ of Habeas Corpus in connection with the charges filed in Northumberland County. A July 1, 2004 hearing was scheduled. However, on June 30, 2004, the Commonwealth, through the Office of the Pennsylvania Attorney General, filed an answer to Appellant's Writ of Habeas Corpus asking the court to deny this petition without a hearing because Appellant waived his preliminary hearing. On July 1, 2004, the court heard argument regarding Appellant's petition, and the court subsequently scheduled a hearing for August 17, 2004. The Commonwealth was granted a continuance, and the hearing was rescheduled for September 7, 2004. On September 7, 2004, Appellant entered a plea of guilty in exchange for a plea agreement. Further, on September 7, 2004, Appellant was sentenced in connection with this plea agreement.

¶ 4 On September 16, 2004, the 20th Statewide Investigating Grand Jury issued Presentment #25 recommending that Appellant be charged with criminal conspiracy, possession with intent to deliver a controlled substance, and delivery of a controlled substance. On February 14, 2005, the Pennsylvania Attorney General's Office filed a criminal information in Union County charging Appellant with criminal conspiracy, possession with intent to deliver a controlled substance, and delivery of a controlled substance. On May 24, 2005, Appellant filed a motion to dismiss criminal information pursuant to the double jeopardy clause of the United States and Pennsylvania Constitutions. Alternatively, Appellant alleged that the criminal information should be dismissed pursuant to sections 109 and 110 of the Pennsylvania Crimes Code.

¶ 5 On October 26, 2005, the court denied Appellant's motion to dismiss criminal information. Appellant filed a timely appeal. The trial court ordered Appellant to file a 1925(b) statement; he complied. In response, the trial court authored a 1925(a) statement indicating that it would rely upon its order entered on October 26, 2005, to address Appellant's matters complained of on appeal.

¶ 6 Appellant presents four issues for our review:

**1.** 35 P.S. § 780–113(a)(16).

**2.** 35 P.S. § 780–113(a)(30).

**3.** 18 Pa.C.S.A. § 903.

1. WHETHER THE LOWER COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS THE CHARGES PENDING AGAINST HIM IN UNION COUNTY PURSUANT TO § 110 OF THE PENNSYLVANIA CRIMES CODE?

2. WHETHER THE LOWER COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS THE CHARGES PENDING AGAINST HIM IN UNION COUNTY PURSUANT TO § 109 OF THE PENNSYLVANIA CRIMES CODE?

3. WHETHER THE LOWER COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS THE CHARGES PENDING AGAINST HIM IN UNION COUNTY PURSUANT TO THE DOUBLE JEOPARDY CLAUSES OF THE UNITED STATES AND PENNSYLVANIA CONSTITUTIONS?

4. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO ISSUE AN ORDER REQUIRING PREPARATION OF THE TRANSCRIPT OF THE TESTIMONY OF WITNESSES BEFORE THE 19TH AND 20TH STATEWIDE INVESTIGATING GRAND JURIES SO THAT HE COULD HAVE USED THESE TRANSCRIPTS TO ESTABLISH HIS CLAIM THAT THE PRESENT PROSECUTION IS BARRED ON DOUBLE JEOPARDY GROUNDS?

*See* Appellant's brief, at 3.

■ ¶ 7 The denial of a pretrial motion to dismiss an indictment on double jeopardy grounds is subject to appellate review unless it appears that the claim is frivolous. *Commonwealth v. Shull,* 811 A.2d 1, 3 (Pa.Super.2002) (citation omitted). Additionally, Rule 313 states that an appeal may be taken as of right from a collateral order of a lower court. *See* Pa. R.A.P. 313(a). Further, the comment to Rule 313 cites examples of collateral orders and includes an order denying a pretrial motion to dismiss based on double jeopardy. *See* Pa.R.A.P. 313 (*citing Commonwealth v. Brady,* 510 Pa. 336, 341–46, 508 A.2d 286, 289–91 (1986) (allowing an immediate appeal from denial of double jeopardy claim under collateral order doctrine where trial court makes a finding that motion is not frivolous)). A motion to dismiss on the basis of the compulsory joinder rule of 18 Pa.C.S.A. § 110 embodies the same constitutional protections underlying the double jeopardy clause justifying interlocutory appeal of such claims. *Shull,* 811 A.2d at 3 (citations omitted).

■ ¶ 8 Appellant's first argument is that the trial court erred in denying his motion to dismiss the charges pending against him in Union County pursuant to 18 Pa.C.S.A. § 110. Specifically, Appellant alleges that because the Northumberland County charges resulted in a conviction, the Union County charges should be barred by 18 Pa.C.S.A. § 110.

¶ 9 Section 110 is stated, in pertinent part, as follows:

**§ 110. When prosecution barred by former prosecution for different offense**

Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relat-

ing to when prosecution barred by former prosecution for same offense) and the subsequent prosecution is for:

  (i) any offense of which the defendant could have been convicted on the first prosecution;

  (ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and occurred within the same judicial district as the former prosecution unless the court ordered a separate trial of the charge of such offense; or

  (iii) the same conduct, unless:

    (A) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or

    (B) the second offense was not consummated when the former trial began.

18 Pa.C.S.A. § 110.

■ ¶ 10 The purpose behind Section 110 is two-fold. "First, it protects a defendant from the governmental harassment of being subjected to successive trials for offenses stemming from the same criminal episode. Secondly, the rule assures finality without unduly burdening the judicial process by repetitious litigation." *Commonwealth v. Gimbara*, 835 A.2d 371, 373–74 (Pa.Super.2003) (*citing Commonwealth v. Failor*, 564 Pa. 642, 647, 770 A.2d 310, 313 (2001)). Generally speaking, a four-part test is used to determine whether a prosecution is barred by 18 Pa.C.S.A. § 110(1)(ii):

Under Section 110(1)(ii), the Commonwealth is prohibited from prosecuting a defendant based on its former prosecution of the defendant if the following four-part test is met: (1) the former prosecution resulted in an acquittal or a conviction; (2) the current prosecution must be based on the same criminal conduct or have arisen from the same criminal episode as the former prosecution; (3) the prosecutor must have been aware of the current charges before the commencement of the trial for the former charges; and (4) the current charges and the former charges must be within the jurisdiction of a single court.

*Gimbara*, 835 A.2d at 373–74 (citing *Failor*, at 647, 770 A.2d at 313).

¶ 11 By requiring compulsory joinder of all charges arising from the same criminal episode, a defendant need only once "run the gauntlet" and confront the awesome resources of the state. *Commonwealth v. Peifer*, 730 A.2d 489, 492 (Pa.Super.1999) (citation and quotation marks omitted). Accordingly, we apply the four-part test cited in *Gimbara* to determine whether Appellant's second prosecution is barred by 18 Pa.C.S.A. § 110(1)(ii).

¶ 12 The first factor is whether the former prosecution resulted in a conviction or acquittal. *Gimbara*, 835 A.2d at 373–74. As a result of the initial charges in Northumberland County, Appellant was convicted of possession with intent to deliver, delivery of a controlled substance, and criminal conspiracy. Accordingly, we find that the first factor has been satisfied.

■ ¶ 13 The second factor is that the current charges must be based on the same criminal conduct or must have arisen from the same criminal episode as the former prosecution. *Gimbara*, 835 A.2d at 373–74. This concept of criminal episode has been defined as "an occurrence or

connected series of occurrences and developments which may be viewed as distinctive and apart although part of a larger or more comprehensive series." *Commonwealth v. Lee,* 291 Pa.Super. 164, 435 A.2d 620, 621 (1981) (citation omitted). With respect to the factors relevant to a determination of "same criminal episode," the Supreme Court framed the standard as follows: Where a number of charges are logically and/or temporally related and share common issues of law and fact, a single criminal episode exists, and separate trials would involve substantial duplication and a waste of scarce judicial resources. *Peifer,* 730 A.2d at 492. In such cases, failure to consolidate will bar successive prosecutions. *Id.,* 730 A.2d at 492. In ascertaining whether a number of statutory offenses are "logically related" to one another, the court should initially inquire as to whether there is a substantial duplication of factual, and/or legal issues presented by the offenses. *Commonwealth v. M.D.P.,* 831 A.2d 714, 719 (Pa.Super.2003) (citation omitted). The single criminal episode analysis essentially considers the totality of the circumstances. *Id.,* 831 A.2d at 719.

¶ 14 Michael Madeira, the Senior Deputy Attorney General with the Pennsylvania Office of Attorney General, testified regarding his role in the first prosecution of Appellant in Northumberland County in connection with the Mario Abreu investigation.[4] *See* N.T. Motion hearing, 7/27/05, at 22. Deputy Madeira testified that he was the Senior Deputy Attorney General involved with the 19th Statewide Investigating Grand Jury and that he led the Abreu investigation. *Id.,* at 24. Further, Deputy

Madeira testified that he may have been vaguely aware of the second set of charges against Appellant in connection with the Demitrius Green investigation[5] but that the Green investigation was assigned to Robert Donaldson, a Deputy Attorney General in the same office. *Id.,* at 30. Additionally, Deputy Madeira testified that there was some limited knowledge on his part of the Green investigation by virtue of the fact that two of the witnesses interviewed during the Abreu investigation mentioned that Appellant was also involved with Demetrius Green. *Id.,* at 31. Deputy Madeira stated that one witness, Christine Brumbach, testified in front of the 19th Grand Jury in connection with the Abreu investigation. *Id.,* at 31. Deputy Madeira testified that he knew nothing about the Green investigation when charging decisions were made pursuant to the Abreu investigation. *Id.,* at 31. However, Deputy Madeira was tangentially aware of the Green investigation at the time that Appellant pleaded guilty to charges in connection with the Abreu investigation. *Id.,* at 32.

¶ 15 Agent David Jordan, a narcotics agent with the Pennsylvania Office of Attorney General, testified that he was the agent that took the lead in the Abreu investigation in Northumberland County. *See* N.T. Motion hearing, 7/27/05, at 45. Further, Agent Jordan testified that the information regarding Appellant came through the Sunbury Police Department. *Id.,* at 45. Agent Jordan stated that he received information that Agent Randy Pollick was conducting a second investigation of a drug organization operating out of

---

4. The Mario Abreu investigation resulted in the 19th Statewide Investigating Grand Jury issuing Presentment # 37, and, consequently, the prosecution of Appellant in Northumberland County.

5. The Demitrius Green investigation resulted in the 20th Statewide Investigating Grand Jury issuing presentment # 25, and, consequently, the filing of a criminal information charging Appellant in Union County.

Snyder and Union Counties. *Id.,* at 47. Agent Jordan testified that the source city in which the controlled substances were obtained for the Abreu investigation was New York City. *Id.,* at 49. Further, he testified that the source city in which the controlled substances were obtained for the Green investigation was Philadelphia. *Id.,* at 49. Agent Jordan's participation in the Green investigation was limited to assisting Agent Pollick with the interview of Appellant, identifying other individuals in the Green investigation, and participating in a controlled buy with an individual who was not involved in the Abreu organization. *Id.,* at 50.

¶ 16 Agent Pollick testified that he was the lead agent in the Green investigation. *See* N.T. Motion hearing, 9/14/05, at 6. Further, Agent Pollick stated that he completed a general review of the Abreu investigation as Agent Jordan's supervisor. *Id.,* at 12–13. Agent Pollick indicated to Agent Jordan that he wanted to be present for Appellant's interview for the Abreu investigation so that he would be able to collect additional information regarding the Green investigation. *Id.,* at 14. However, Agent Pollick testified that he did not obtain any additional information from Appellant at that interview and that he had no intent to charge Appellant pursuant to the Green investigation at that time. *Id.,* at 16. Further, Agent Pollick stated that Ms. Brumbach testified in front of the 20th Grand Jury with regard to the Green investigation. *Id.,* at 24. Agent Pollick testified that he was not aware that Appellant was charged in connection with the Abreu investigation after the 19th Grand Jury proceedings. *Id.,* at 28. Finally, Agent Pollick stated that he reviewed the specifics of the Abreu investigation with Agent Madeira and Agent Donaldson to assure that there was no duplication of charges or evidence in the Green investigation. *Id.,* at 28.

¶ 17 We liken this situation to that in *Commonwealth v. Bracalielly,* 540 Pa. 460, 473, 658 A.2d 755, 761 (1995), in which our Supreme Court determined that the appellant's actions did not amount to a single criminal episode because "proof of each individual instance of possession and delivery in each county would not rest solely on the credibility of a single witness, but rather, would require the introduction of the testimony of completely different police officers and expert witnesses as well as the establishment of completely different chains of custody." Our Supreme Court found that the two cases did "not present the substantial duplication of issues of law and fact necessary to establish a logical relationship between the crimes." *Id.,* at 473, 658 A.2d at 761. Additionally, our Supreme Court noted that in determining if the "logical relationship" prong of the test has been met, we must also be aware that a mere *de minimis* duplication of factual and legal issues is insufficient to establish a logical relationship between offenses. *Id.,* at 472, 658 A.2d at 761. Rather what is required is a *substantial* duplication of issues of law and fact. *Id.,* at 472, 658 A.2d at 761 (citation omitted) (emphasis added).

¶ 18 In this situation, although one witness, Ms. Brumbach, testified at both the 19th and 20th Grand Jury proceedings, Appellant's charges were not based solely upon the testimony of one witness. Further, the trial court heard testimony from different investigating officers regarding the two different investigations. Deputy Attorney General Madeira and Agent Jordan testified regarding their involvement with the Abreu investigation. *See* N.T. Motion hearing, 7/27/05, at 22. Deputy Attorney General Madeira also testified that the Green investigation was assigned to Deputy Attorney General Donaldson. *Id.,* at 30. Although he conducted a gener-

al review of the Abreu investigation, Agent Pollick testified that his involvement was with the Green investigation. *See* N.T. Motion hearing, 9/14/05, at 12–13. Additionally, Agent Pollick stated that he reviewed the specifics of the Abreu investigation with Agent Madeira and Agent Donaldson before filing charges to assure that there was no duplication of charges or evidence in the Green investigation. *Id.,* at 28. Further, the trial court accepted the testimony of Deputy Attorney General Madeira when he said that he was unaware of the Green investigation at the time that he was involved with the Abreu investigation. *Id.,* at 40; *see also Commonwealth v. Davidson,* 860 A.2d 575, 579 (Pa.Super.2004) (it is within the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced). Despite the *de minimis* duplication of factual issues, *i.e.,* the testimony of Ms. Brumbaugh in both the 19th and 20th Grand Jury proceedings, we do not find enough similarities between the Abreu and Green investigations to consider them "logically related" to one another. *M.D.P.,* 831 A.2d at 719.

¶ 19 Further, we must take into consideration the temporal sequence of events to aid our determination of whether both prosecutions are part of the same criminal episode. *M.D.P.,* 831 A.2d at 719. The temporal relationship between criminal acts will be a factor that frequently determines whether the acts are logically related. *Commonwealth v. Hunter,* 768 A.2d 1136, 1141 (Pa.Super.2001) (citation and quotation marks omitted). However, the definition of a "single criminal episode" should not be limited to acts which are immediately connected in time. *Id.,* 768 A.2d at 1141. "Transaction" is a word of flexible meaning. *Id.,* 768 A.2d at 1141. It may comprehend a series of many oc-

currences, depending not so much upon the immediateness of their connection as upon their logical relationship. *Id.,* 768 A.2d at 1141.

¶ 20 The Abreu investigation was based upon the time period from late 2002 through July 2003. *See* N.T. Motion hearing, 7/27/05, at 34. The Green investigation was based upon the time period from October 2002 through September 2004. *See* N.T. Motion hearing, 9/14/05, at 8. Although there is some overlap between the two investigations from October 2002 through July 2003, we do not find that the temporal relationship between these two investigations leads to the conclusion that they are part of the same criminal episode.

¶ 21 The first presentment pursuant to the Abreu investigation was issued on September 17, 2003, and Appellant was sentenced in connection with those charges on September 7, 2004. The second presentment pursuant to the Green investigation was issued on September 16, 2004, after Appellant pleaded guilty to charges connected with the first presentment. During the time period encompassed by both investigations, Appellant dealt with two separate criminal organizations, Abreu and Green. Each organization had a different source city; Abreu was based out of New York City whereas Green was based out of Philadelphia. *See* N.T. Motion hearing, 7/27/05, at 49. Further, Appellant's drug activity continued after the completion of the Abreu investigation in July 2003. On the surface, these two investigations seem to have a close temporal relationship; however, when we take into consideration Appellant's simultaneous participation in two different drug organizations, this factor is not dispositive. Therefore, the temporal relationship between the two investigations does not establish that they were part of the same criminal episode.

¶ 22 We find that, based upon the totality of the circumstances, Appellant's involvement with the Abreu and Green conspiracies constituted two separate criminal episodes that are distinct and apart from each other although both are part of a more comprehensive series of drug involvement. *Lee*, 435 A.2d at 621. We do not find a substantial logical or temporal relationship between the Abreu and Green investigations. *Gimbara*, 835 A.2d at 373–74; *see also M.D.P.*, 831 A.2d at 719. Accordingly, the second factor that the current charges must be based on the same criminal conduct or must have arisen from the same criminal episode as the former charges has not been satisfied.

¶ 23 As the four-part test set forth in *Gimbara* has not been satisfied, we find that 18 Pa.C.S.A. § 110(1)(ii), does not bar the current charges brought against Appellant for his involvement in the Green conspiracy.[6] Therefore, Appellant's first argument fails.

■ ¶ 24 Appellant's second argument is that the trial court erred in denying Appellant's motion to dismiss the charges pending against him in Union County pursuant to 18 Pa.C.S.A. § 109.

¶ 25 Section 109 is stated, in pertinent part, as follows:

**§ 109. When prosecution barred by former prosecution for the same offense**

When a prosecution is for a violation of the same provision of the statutes and is based upon the same facts as a former prosecution, it is barred by such former prosecution under the following circumstances:

\* \* \*

(2) The former prosecution was terminated, after the indictment had been found, by a final order or judgment for the defendant, which has not been set aside, reversed, or vacated and which necessarily required a determination inconsistent with a fact or a legal proposition that must be established for conviction of the offense.

(3) The former prosecution resulted in a conviction. There is a conviction if the prosecution resulted in a judgment of conviction which has not been reversed or vacated, a verdict of guilty which has not been set aside and which is capable of supporting a judgment, or a plea of guilty accepted by the court. In

---

6. Because we find that the second prong has not been satisfied, we need not proceed to an analysis of the other two prongs of the test to determine if 18 Pa.C.S.A. § 110(1)(ii) bars the current charges brought against Appellant in the Green investigation. However, we note that the third prong is also not satisfied by these circumstances. The third prong is that the prosecutor must have been aware of the current charges before the commencement of the trial for the former charges. *Gimbara*, 835 A.2d at 373–74.

Deputy Madeira testified that he may have been vaguely aware of the charges pending against Appellant in the Green investigation at the time he was involved with the Abreu investigation. *See* N.T. Motion hearing, 7/27/05, at 30. However, Deputy Madeira testified that the Green investigation was assigned to Deputy Donaldson. *Id.*, at 30. Additionally, Deputy Madeira testified that he knew nothing about the Green investigation when charging decisions were made pursuant to the Abreu investigation. *Id.*, at 31. Therefore, because Deputy Madeira was not aware of the Green investigation when he made decisions before the commencement of trial for the Abreu investigation, the third prong is not satisfied. *Gimbara*, 835 A.2d at 373–74.

Finally, we note that the fourth prong of this test is satisfied because the charges brought pursuant to both the Abreu and Green investigations are within the jurisdiction of a single court, the common pleas court in the Commonwealth of Pennsylvania. *Gimbara*, 835 A.2d at 373–74.

the latter two cases failure to enter judgment must be for a reason other than a motion of the defendant. 18 Pa.C.S.A. § 109.

¶ 26 The language of section 109 is plain and unambiguous: "when a prosecution is for a violation of the same provision of the statutes and is based upon the same facts as the former prosecution, it is barred by such former prosecution." *Commonwealth v. Schmotzer*, 831 A.2d 689, 692 (Pa.Super.2003). Because the introductory paragraph to section 109 uses the word "and," section 109 applies when subsequent charges are for a violation of the same provision of the statutes and are based on the same facts as the former charges. *Id.*, 831 A.2d at 692 (citation omitted).

¶ 27 Appellant is correct in his assertion that the current charges are based upon the same statutes as the former charges. As a result of the Abreu investigation, Appellant was charged with possession with intent to deliver, delivery of a controlled substance, and criminal conspiracy. Appellant is currently facing charges for violations of the same three statutes in connection with the Green investigation. Therefore, the first requirement pursuant to 18 Pa.C.S.A. § 109 is satisfied. However, as we discussed at length above, we do not find that both sets of charges are based upon the same factual circumstances, and, therefore, they do not constitute the same criminal episode. Accordingly, we find that 18 Pa.C.S.A. § 109 does not bar the issuance of Appellant's current charges in connection with the Green investigation. *Schmotzer*, 831 A.2d at 692 (citation omitted). Therefore, Appellant's second argument fails.

¶ 28 Appellant's third argument is that the trial court erred in denying Appellant's motion to dismiss the charges pending against him in Union County pursuant to the double jeopardy clauses of the United States and Pennsylvania Constitutions. Under the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution, applicable to the States through the Fourteenth Amendment, no person "shall ... be subject for the same offense to be twice put in jeopardy of life or limb." *Commonwealth v. Mattis*, 454 Pa.Super. 605, 686 A.2d 408, 410 (1996) (citations omitted). The Pennsylvania Constitution similarly provides that "No person shall, for the same offense, be twice put in jeopardy of life or limb...." *Mattis*, 686 A.2d at 410 (*citing* Pa. Const. Art. I, § 10).

¶ 29 Consideration of the constitutional protections contained in the double jeopardy clauses is necessary where the statutory provisions relating to subsequent prosecutions are not applicable. *Commonwealth v. Keenan*, 365 Pa.Super. 437, 530 A.2d 90, 93 (1987) (citations omitted). We employ a unitary analysis of the state and federal double jeopardy clauses since the protections afforded by each constitution are identical. *Id.*, 530 A.2d at 93 (citations omitted). The protections afforded by double jeopardy are generally recognized to fall within three categories: (1) protection against a second prosecution for the same offense after an acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *Id.*, 530 A.2d at 93 (citations omitted). The constitutional prohibition of double jeopardy also protects the convicted defendant from multiple prosecutions for the same offense, requiring a "single criminal episode" analysis. *See Gimbara*, 835 A.2d at 374 (citation omitted).

¶ 30 As we have previously determined, the Abreu and Green investigations consti-

tute two separate criminal episodes, and, therefore, they are not the same offense within the meaning of the double jeopardy clauses. Therefore, we conclude that the double jeopardy clauses are inapplicable to preclude the current charges issued against Appellant because the constitutional prohibition of double jeopardy is designed to protect a convicted defendant from multiple prosecutions for the *same* offense. *Commonwealth v. DeLong*, 879 A.2d 234, 238 (Pa.Super.2005) (citation omitted) (emphasis added). Accordingly, Appellant's third argument fails.

¶ 31 Appellant's fourth argument is that the trial court erred in denying Appellant's motion to issue an order requiring preparation of the transcripts from the 19th and 20th Statewide Investigating Grand Juries. Appellant contends that he is entitled to copies of the grand jury transcripts pursuant to Pa.R.Crim.P. § 230(B)(3) and Pa.R.Crim.P. § 573(B)(1)(a).

¶ 32 Before we address Appellant's final issue on the merits, we must first determine whether this issue is properly before us on appeal. Appellant filed his "Motion to Dismiss Information" on May 24, 2005. Appellant did not include his request for the 19th and 20th Grand Jury transcripts in this motion, nor did he include this request in his accompanying brief. Appellant made an oral motion requesting the transcripts at the September 14, 2005 motion hearing. *See* N.T. Motion hearing,

9/14/05, at 29. The trial court subsequently issued an order on September 15, 2005, denying Appellant's motion for transcripts. Additionally, the trial court issued an order on October 26, 2005, denying Appellant's motion to dismiss information. Appellant then filed an appeal on October 31, 2005, in which he appealed from the order dated October 26, 2005.[7] Although Appellant has included his final issue in his 1925(b) statement of matters complained of on appeal, the September 15, 2005 order is not before this court at this time. Because Appellant's final issue involves the September 15, 2005 order that is not currently before us for review, we dismiss Appellant's fourth argument without prejudice.[8]

¶ 33 In conclusion, we find that Appellant was involved with two separate criminal organizations, based out of two separate cities that resulted in two separate grand jury investigations and two separate presentments. Therefore, the former and current prosecutions are based upon two separate criminal episodes. Accordingly, Appellant's arguments alleging that the trial court erred in denying his motion to dismiss the criminal information pursuant to 18 Pa.C.S.A. §§ 109–110, and the double jeopardy clauses of the United States and Pennsylvania Constitutions fail. Further, we are unable to address Appellant's fourth argument on the merits for his failure to file an appeal from the September 15, 2005 order that denied his request for

---

7. Thus, the only order on appeal at this time is Appellant's appeal from the October 26, 2005 collateral order.

8. An appeal from the September 15, 2005 order would be interlocutory in nature as it does not dispose of all claims and all parties to the litigation. *See Techtmann v. Howie*, 720 A.2d 143, 145 (Pa.Super.1998) (*citing* Pa.R.A.P. 341(b)(1)) ("A final order is any order that disposes of all claims and of all parties."). However, we make no determination whether an appeal from this order would be an appeal from an interlocutory order as of right pursuant to Pa.R.A.P. 311, an interlocutory order by permission pursuant to Pa.R.A.P. 312, 1311, and 42 Pa.C.S.A. § 702(b), or a collateral order pursuant to Pa.R.A.P. 313 because Appellant did not appeal from the September 15, 2005 order. *See Pace v. Thomas Jefferson Univ. Hosp.*, 717 A.2d 539, 540 (Pa.Super.1998) (citations omitted).

copies of the grand jury transcripts. As all of Appellant's arguments fail or are dismissed, we affirm the trial court's October 26, 2005 order.

¶ 34 Order affirmed. Jurisdiction relinquished.