J-S28018-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                              :              PENNSYLVANIA
                              :

             v.                   :

                              :

MATTHEW JOSEPH ZEIGLER         :

                              :

           Appellant         :      No. 41 MDA 2022

Appeal from the Order Entered December 14, 2021
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0001672-2020

BEFORE:  OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:       **FILED DECEMBER 07, 2022**

Matthew Joseph Zeigler ("Appellant") appeals the order denying his pre-trial Motion to Dismiss as the Prosecution is Barred by Double Jeopardy and Compulsory Joinder. We affirm.

In December 2020, the Pennsylvania Attorney General filed a criminal complaint charging Appellant with eight counts of endangering the welfare of children ("EWOC"), three counts of intimidation of witnesses or victims, three counts of obstructing administration of law or other governmental function, and two counts of indecent assault without consent ("EWOC prosecution").[1] The Commonwealth subsequently amended the Information to add one count of conspiracy[2] to commit EWOC. The charges followed an investigation into

_____

[1] 18 Pa.C.S.A. §§ 4304(a), 4952(a)(2), 5101, and 3126(a)(1), respectively.

[2] 18 Pa.C.S.A. § 903(a).

Appellant's alleged physical and emotional abuse of his children. The alleged abuse included, but was not limited to, blows with Appellant's hands and a belt, forcing the children to stand for hours with outstretch arms, food deprivation, and confining the children to closets for extended periods.

In August 2021, Appellant filed an omnibus pre-trial motion, which included a motion to dismiss the prosecution as barred by double jeopardy and compulsory joinder. He pointed out that in April 2020, he had been charged with simple assault and recklessly endangering another person ("REAP") following his discharge of a firearm inside his home after he and his wife had an argument, and he pled guilty to REAP in November 2020 ("REAP prosecution").[3] Omnibus Pre-trial Motion, filed Aug. 16, 2021, at ¶ 3. He stated that his wife and five of his children were in or near the home at the time he discharged the weapon. *Id.* at ¶ 4. He noted the Commonwealth alleged the children heard Appellant and his wife arguing prior to the discharge of the firearm. *Id.* at ¶ 5. He maintained that in the EWOC prosecution, the Commonwealth alleged he imposed "excessive and abusive physical and emotional discipline upon his eight (8) children," and it alleged that his actions

_____

[3] The criminal complaint filed in the REAP prosecution stated Appellant put his "his spouse, CHRISTINE ZEIGLER[,] and their numerous children in danger of death or serious bodily injury by shoving CHRISTINE and discharging his firearm multiple times inside the occupied home." Omnibus Pretrial Motion, filed Aug. 16, 2021, at Exh. A. He pled "guilty to REAP based on his shooting the firearm out of the window which placed or may have placed R.Z. and the neighbors in danger of death or serious bodily injury." Trial Court Opinion, filed Dec. 14, 2021, at 6.

towards his wife, which the children witnessed, "constituted a portion of the emotional abuse." *Id.* at ¶¶ 6-7.

Based on this, he asserted that the Commonwealth could have charged him with EWOC in the REAP prosecution and maintained his actions in April 2020 "are the culmination of the 'course of conduct' which provides the basis of the instant prosecution and for each of the eight (8) counts of [EWOC]." *Id.* at ¶¶ 11-12. He further claimed the Commonwealth was aware of the facts giving rise to both prosecutions at the time he was convicted in the REAP prosecution, *id.* at ¶ 13, and that "most, if not all, of the witnesses to the first prosecution would be witnesses as to the subsequent prosecution." *Id.* at ¶ 18.

The trial court held a hearing on the motion, after which the parties submitted briefs. In December 2021, the trial court denied the motion. Appellant filed a timely notice of appeal.[4]

Appellant raises the following issue on appeal:

---

[4] In January 2022, the trial court amended its order denying the motion to dismiss because the prosecution violated double jeopardy or compulsory joinder rule to "indicate that although the court did not agree with [Zeiger's] arguments, his claim was not frivolous." Order, Jan. 14, 2022; *See* Pa.R.Crim.P. 587(b)(6) ("If the judge denies the motion but does not find it frivolous, the judge shall advise the defendant on the record that the denial is immediately appealable as a collateral order."). Further, "[a] motion to dismiss on the basis of the compulsory joinder rule of 18 Pa.C.S.A. § 110 embodies the same constitutional protections underlying the double jeopardy clause justifying interlocutory appeal of such claims." *Commonwealth v. Schmidt*, 919 A.2d 241, 244 (Pa.Super. 2007) (citations omitted).

1. Did error occur where the Trial Court denied Omnibus relief under 18 Pa.C.S.A. Sec. 110(1)(i)?

2. Did error occur where the Trial Court denied Omnibus relief under 18 Pa.C.S.A. Sec. 110(1)(ii)?

3. Did error occur where prior counsel was ineffective in failing to attach exhibits to the defense Omnibus Motion?

Appellant's Br. at 5 (suggested answer omitted).

Appellant's first two issues claim the court erred when it denied his motion to dismiss for violation of the compulsory joinder rule, 18 Pa.C.S.A. § 110(1)(i)-(ii). "Whether dismissal of a charge is required by Section 110 is a question of law subject to our plenary, *de novo* review." **Commonwealth v. Don Bullian**, 282 A.3d 866, 869 (Pa.Super. 2022) (citing **Commonwealth v. Dawson**, 87 A.3d 825, 826-27 (Pa. Super. 2014)).

The compulsory joinder rule bars prosecution for a violation of a different crime where a former prosecution resulted in an acquittal or conviction and the subsequent prosecution is for, among other things, an offense for which the defendant could have been convicted in the first prosecution, or the offense is based on the same conduct or arises from the same criminal episode and the offense was known at the time of the commencement of the first trial:

> Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:
>
> (1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for:

(i) any offense of which the defendant could have been convicted on the first prosecution;

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and occurred within the same judicial district as the former prosecution unless the court ordered a separate trial of the charge of such offense or the offense of which the defendant was formerly convicted or acquitted was a summary offense or a summary traffic offense[.]

18 Pa.C.S.A. § 110(1)(i)-(ii).

Appellant first contends the court erred in denying relief under Section 110(1)(i), arguing he could have been convicted of the current charges at the time he entered his guilty plea in the REAP prosecution. Appellant notes that he pled guilty to discharging a firearm during an argument with his wife while his five youngest children were in the home. He points out that the children were "in close enough proximity to hear the arguing and the shouting, hear the gunfire, and be both emotionally and physically endangered by the argument and the gunfire." Appellant's Br. at 12.

He claims he was "charged with endangering the welfare of his minor children vis-à-vis the reckless endangerment statute." *Id.* He argues that the discharge of the firearm and the loud arguing "could clearly contribute to mental and emotional injury to children, as the children not only would feel the danger of being in close proximity to the discharge of a firearm, but also the bewildering distress of having heard the gunshot and having no clue whether one of their parents was dead." *Id.* at 13. He claims that although

"the acts that led to the [EWOC] charges are said to have lasted years, instead of moments, that is exactly what a course of conduct is – a number of acts, lasting moments, over an indefinite period of time of a similar nature." *Id.* at 14.

Appellant points out that in the EWOC prosecution, the complaint notes that a child witnessed her parents engage in loud shouting and Appellant push and choke his wife. He claims the only difference between this allegation and the facts that underscored the REAP prosecution are that the child witnessed the abuse with her eyes rather than her ears. He claims the children were listed as victims in the REAP prosecution and the charges underlying that prosecution "would simply be . . . among the penultimate events of a putative, 'course of conduct,' which is alleged to have lasted many years." *Id.* at 16. He argues that because the Commonwealth could have convicted him of EWOC of at least one child during the REAP prosecution, "given that they have alleged a course of conduct as to all of the children, the government could have charged and convicted [Appellant] with all of the charges set forth in the [EWOC prosecution]." *Id.* at 17.

Appellant further alleges the Commonwealth failed to demonstrate when it had knowledge of the facts that support the EWOC prosecution, and points out the interviews with the children occurred in the spring and summer of 2020. He maintains the investigating officer in the REAP case was aware of the facts giving rise to the EWOC prosecution. He argues the Commonwealth did not have to complete its investigation before his prior conviction, "but

rather, only have sufficient evidence to establish the charges." Appellant's Reply Br. at 2.

The Commonwealth responds that, even if Appellant could have been charged in that case with EWOC for his conduct on April 16, the Commonwealth is not barred from charging him with EWOC based on "entirely different and unrelated conduct." Commonwealth's Br. at 15. It points out that the affidavit of probable cause supporting the REAP prosecution related to Appellant's discrete conduct on April 16, 2020, where he argued with his wife and discharged a firearm out his bedroom window. The Commonwealth states that if it had charged EWOC in the REAP prosecution, it would have been based only on the April 2020 conduct, not the course of conduct that spanned over a decade that made the basis for the EWOC prosecution.

The Commonwealth disputes Appellant's claim that his conduct in April 2020 was not different from the allegations in the EWOC prosecution, pointing out that he currently is "charged with a course of conduct that spans well over a decade relating to various forms of physical and emotional abuse that [he] inflicted on each of his eight children." *Id.* at 16. It argues the offenses "are based on how [Appellant] treated his children over the course of years that directly jeopardized their well-being," not on an argument he had with his wife or gunshots. *Id.* The Commonwealth argues that merely because Appellant's conduct in April 2020 "may have been emotionally upsetting to the children who overheard it, does not mean that Appellant's conduct on that date magically encompasses all of [his] prior emotionally and physically abusive

conduct toward his children – conduct that included grueling and demeaning punishments over the course of years rather than one afternoon." ***Id.*** at 18. The Commonwealth further maintains that its investigation culminating in the EWOC prosecution did not begin until after Appellant was arrested in April 2020, and included interviews of the children, the testimony from the dependency hearings, and an interview of Appellant, which did not occur until almost a week after he pled guilty in the REAP prosecution.

Under Section 110(1)(i), a subsequent prosecution is barred if it is based on "any offense of which the defendant could have been convicted in the first prosecution." 18 Pa.C.S.A. § 110(1)(i).

Here, the trial court found Appellant could not have been convicted of the offenses alleged in the EWOC prosecution in the REAP prosecution:

> In the [REAP prosecution, Appellant] was charged with two counts of simple assault and one count of REAP arising out of an incident that occurred on April 16, 2020 during which [Appellant] discharged a firearm from inside his residence out an open window following an argument with his wife. Present inside the home were [Appellant's] wife and four of his eight children – N.Z. (female), C.Z., G.Z., and N.Z. (male). His daughter, R.Z., was at the property but outside of the residence. Neighbors, Mark Hill and Hillary Fisher, were included as victims of the REAP charge. [Appellant's] older children, M.Z., D.Z., and E.Z., were not at or near the premises. On November 12, 2020, [Appellant] pleaded guilty to REAP based on his shooting the firearm out of the window which placed or may have placed R.Z. and the neighbors in danger of death or serious bodily injury.

The charges in this case are eight counts of EWOC[5] (one count for each of [Appellant's] children) related to allegations of excessive and abuse physical and emotional discipline; three counts of intimidation of witnesses or victims and three counts of obstruction related to allegations that [Appellant] tried to discourage three of his children from being completely truthful and forthcoming with law enforcement and [Children and Youth Services] workers by making statements to them that he and his wife would be charged and go to jail, the children would be placed in foster care where they would be raped and murdered, and that the children should "tell the truth in a beautiful way" which the children understood as a direction to make [Appellant] look good or not look bad; two counts of indecent assault for allegedly touching his daughters' buttocks; and one count of conspiracy to commit EWOC.

[Appellant] could not have been convicted of these charges in the [REAP] prosecution. [Appellant] was not charged with EWOC, intimidation, obstruction or indecent assault in the [REAP] case. Furthermore, these charges were not based on [Appellant's] discharge of the firearm. Additionally, since EWOC only applies to a parent supervising the welfare of a child under 18 years of age, the shooting incident on April 16, 2020 could not be the basis of any EWOC charge against [Appellant's] five oldest children because [they had turned 18 prior to April 2020]. Furthermore, E.Z., D.Z., and MZ. were not at the residence when the shooting occurred on April 16, 2020.

The Commonwealth was not aware of these charges when it filed the charges in the [REAP] case. It was still investigating the charges when [Appellant] entered his guilty plea.

Trial Court Opinion, filed Dec. 14, 2021, at 5-7 ("Trial Ct. Op.").

_____

[5] A person commits EWOC where the defendant is "[a] parent, guardian or other person supervising the welfare of a child under 18 years of age," and "he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a)(1). An EWOC offense is graded as a first-degree misdemeanor but is a third-degree felony if "the actor engaged in a course of conduct of endangering the welfare of a child." *Id.* at 4304(b)(1)(ii).

The trial court did not err in finding that Appellant could not have been convicted of the offenses charged in the EWOC prosecution in the earlier REAP prosecution. That Appellant's children may have been emotionally harmed by his actions towards his wife in April 2020 does not mean that at that time he could have been convicted of EWOC or the other crimes charged in the EWOC prosecution. The facts underlying the REAP prosecution were based on a discrete act in April 2020 that occurred during an argument with his wife. It did not entail allegations of his abusive actions toward his children spanning years or his statements to his children intended to impact their testimony, as alleged in the EWOC prosecution. He could not "have been convicted" of the charges alleged in the EWOC prosecution during the REAP prosecution.

Appellant next contends the trial court erred in denying his motion to dismiss under Section 110(1)(ii) because, according to Appellant, the EWOC prosecution is based on the same conduct or arises out the same criminal episode as the REAP prosecution. He points out the course of conduct alleged in the EWOC prosecution spans from July 6, 2011 through December 4, 2020, which includes April 16, 2020. He alleges five of the alleged child victims in the EWOC prosecution are also victims in the REAP prosecution.

He also contends the Commonwealth was aware of the allegations underlying the EWOC prosecution when he pled guilty in the REAP prosecution. Appellant maintains "virtually all of the factual allegations giving rise to both prosecutions are contained in the transcripts of the dependency hearings, which were submitted into evidence, and which hearings concluded in June of

2020," which "demonstrates the knowledge of the Commonwealth as it related to the [EWOC] charges at the time of, and well prior to, the conviction in the [REAP prosecution]." Appellant's Br. at 29. Appellant maintains that on April 16, 2020, CYS questioned the children about whether the shooting was a result of a course of conduct.

Appellant also maintains the evidence in both prosecutions was the same, claiming the witnesses for both would include the children, Appellant's wife, the CYS interviewer, the CYS caseworker, and Detective Willie Weber. He stated that "[i]n theory, all of the factual allegations set forth in the Second Bill of Particulars in the instant matter would have been admissible at the trial in the former prosecution . . . . as 'res gestae, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident.'" *Id.* at 32. Appellant points out that although the April 2020 incident is not in the Second Bill of Particulars, it is in the Affidavit of Probable Cause filed in the Criminal Complaint in the EWOC prosecution.

The Commonwealth agrees that the former prosecution resulted in a conviction and the charges are within the same judicial district. It also concedes, "for the sake of argument," that it was aware of the conduct giving rise to the EWOC prosecution prior to the REAP prosecution plea hearing, although it maintains it had not completed the investigation. However, it argues Appellant cannot establish the EWOC prosecution is based on the same criminal conduct or arose from the same criminal episode as the REAP prosecution. It maintains there is no substantial duplication and the

- 11 -

prosecutions do not share a temporal or logical relationship. The REAP prosecution related to a single, discrete incident involving an argument between Appellant and his wife where he shot a firearm. The EWOC prosecution is based on a pattern of conduct relating to each of his children during the time they were minors, during which time Appellant "repeatedly employed methods of punishment that were both physically and emotionally cruel and engaged in behaviors that were degrading to them." Commonwealth's Br. at 23-24. The Commonwealth points out that a trial in the EWOC prosecution will require the testimony of the children and encompass incidents that date back years. In contrast, the Commonwealth did not need to elicit the testimony of all children to prove the charges at the REAP prosecution. Rather, it would have needed the testimony of Appellant's wife, the two neighbors, and his adult child, who had been outside at the time of the incident, and the testimony would have been limited to Appellant's actions on April 16, 2020.

Under Section 110(1)(ii), "a current prosecution is prohibited if: (1) the former prosecution resulted in an acquittal or conviction; (2) the current prosecution was based on the same criminal conduct or arose from the same criminal episode as the former prosecution; (3) the prosecutor was aware of all of the charges when the former prosecution commenced; and (4) all of the charges occurred within the same judicial district." ***Commonwealth v. Perfetto***, 207 A.3d 812, 815 (Pa. 2019). To determine whether the current prosecution is based on the same criminal conduct or arose from the same

- 12 -

criminal episode, the court must look at the temporal and logical relationship between the charges:

> Generally, charges against a defendant are clearly related in time and require little analysis to determine that a single criminal episode exists. However, in defining what acts constitute a single criminal episode, not only is the temporal sequence of events important, but also the logical relationship between the acts must be considered.

*Commonwealth v. Reid*, 77 A.3d 579, 582 (Pa. 2013) (citation omitted).

To determine whether the offenses are logically related, courts should "inquire as to whether there is a substantial duplication of factual[] and/or legal issues presented by the offenses." *Id.* (citation omitted). If duplication exists, "then the offenses are logically related and must be prosecuted at one trial." *Id.* (citation omitted). However, "a mere *de minimis* duplication of factual and legal issues is insufficient to establish a logical relationship between offenses. Rather[,] what is required is a substantial duplication of issues of law and fact." *Id.* at 582-83 (citation omitted) (alteration in original). In making this determination, courts should be guided by the policy considerations Section 110 was designed to serve: "(1) to protect a person accused of crimes from governmental harassment of being forced to undergo successive trials for offenses stemming from the same criminal episode; and (2) as a matter of judicial administration and economy, to assure finality without unduly burdening the judicial process by repetitious litigation." *Id.* at 583 (citation omitted).

In **Reid**, the defendant pled guilty in June 2007 to possession with intent to deliver ("PWID") for a controlled buy of cocaine that occurred on November 14, 2006. **Id.** at 581. In March 2009, a grand jury indicted the defendant following an investigation into a drug distribution organization. **Id.** It found that between 2006 and March 2007, the defendant sold cocaine at his home and various bars. **Id.** The defendant argued the subsequent case should be dismissed pursuant to the compulsory joinder rule, alleging it arose from the same criminal episode as the 2007 case. **Id.** The Pennsylvania Supreme Court found the compulsory joinder rule did not apply. It reasoned there were factual differences between the two prosecutions, noting the methods of delivery, sources of contraband, and investigating officer were the same, but there were different victims and major movers. **Id.** at 586 (citation omitted). Further, the subsequent prosecution referenced the defendant's occasional use of a middleman to conduct deliveries. **Id.** Moreover, different evidence would be required to establish the offenses in the different prosecutions, with only one overlapping witness. **Id.** The Court concluded there was "no substantial duplication of issues of fact or law" and therefore "the two prosecutions [did] not arise from the same criminal episode." **Id.**

In **Commonwealth v. M.D.P.**, the defendant pled guilty in July 2001 to two counts of indecent assault of his son, R.P. 831 A.2d 714, 716 (Pa.Super. 2003). During a February 2001 interview with the police, the defendant admitted to inappropriate sexual contact with two other sons, A.P. and J.P., from May through August 2000. The Commonwealth filed charges in February

2002 alleging the defendant committed sex crimes against all three boys. The defendant filed a motion to dismiss pursuant to Section 110. The trial court granted it as to R.P., but denied it as to the crimes allegedly committed against the defendant's two other sons. This Court affirmed. We reasoned that there was not a substantial duplication of legal or factual issues. We pointed out the legal issues were different, reasoning that in the first prosecution, the defendant had been charged with indecent assault, and in the second prosecution he was charged with rape, statutory sexual assault, involuntary deviate sexual intercourse, sexual assault, aggravated indecent assault, indecent assault, incest, and corruption of minors. *Id.* at 720. We noted the inclusion of indecent assault in the second prosecution, "risk[ed] some duplication of legal issues, but not enough to warrant dismissal of the charges." *Id.* We also concluded the facts in each case differed, noting that R.P. was the witness in the first prosecution, but A.P. and J.P. would be the witnesses in the second, and that the acts allegedly committed were different. *Id.* at 720-21.

Here, the trial court concluded the prosecutions were not temporally or logically related. Trial Ct. Op. at 7. It pointed out that the "former prosecution was based on [Appellant's] discharge of a firearm on April 16, 2020," and that "[n]one of the current charges are based on that conduct." *Id.* It stated the "EWOC charges are based on [Appellant's] years of imposing excessive and abusive physical and emotional discipline on his children, the intimidation and obstruction charges are based on [Appellant's] statements to three of his

children, and the indecent assault charges are based on [Appellant] touching his daughters' buttocks." *Id.* at 7-8. The court further found the charges did not arise from the same criminal episode, noting many of the crimes are not temporally related. It pointed out that "the EWOC charges against the older children occurred anywhere from several months to several years before the shooting incident." *Id.* at 8. It further found the crimes were not logically related, because the crimes and facts were different. *Id.* The court pointed out that the children did not see Appellant discharge the firearm, and "the main, if not the only, witness in the former prosecution would have been [Appellant's] wife." *Id.* The court noted that "[i]n contrast, the Commonwealth has alleged that all of the children saw and experienced [Appellant] inflict excessive and abusive discipline on them" and the children "are the primary witnesses in the current prosecution." *Id.*

The trial court did not err. The REAP prosecution is not temporally or logically related to the EWOC prosecution. There is no substantial duplication of legal or factual issues. The crimes charged in each prosecution differed. Further, the facts underlying the REAP prosecution occurred on April 16, 2020. In contrast, the facts underlying the EWOC prosecution spanned years. That the time span included April 2020, does not make all crimes temporally related. *See Reid*, 77 A.3d at 582. Further, the evidence and witnesses needed to establish the crimes are not similar. Contrary to Appellant's contention, the evidence regarding the facts underlying the EWOC prosecution would not have been admissible in the REAP prosecution, as they were not

- 16 -

relevant to whether he fired a gun during an argument with his wife. At the REAP prosecution, Appellant's wife would have been the primary witness. In contrast, the children are the primary witnesses in the EWOC prosecution. Accordingly, we conclude the EWOC prosecution is not based on the same criminal conduct and did not arise from the same criminal episode as the REAP prosecution. *See Reid*, 77 A.3d at 586; *M.D.P.*, 831 A.2d at 720-21.

In his final claim, Appellant claims his prior counsel was ineffective for failing to attach exhibits to the omnibus motion. He maintains we should review his claim now, rather than wait for post collateral review, because the claim is meritorious and apparent from the record. We disagree.

Generally, a claim that trial counsel is ineffective is deferred to collateral review under the Post Conviction Relief Act. *Commonwealth v. Holmes*, 79 A.3d 562, 563 (Pa. 2013). This general rule has exceptions that allow for review of an ineffectiveness claim on direct review, including an exception that allows review where the ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice. *Id.*; *Commonwealth v. Delgros*, 183 A.3d 352, 360 (Pa. 2018).

Appellant's ineffectiveness claim should be deferred to PCRA proceedings. Contrary to Appellant's claim, any alleged ineffectiveness is not apparent from the record. It is not clear that any exhibits would have impacted the decision or that counsel did not have a reasonable basis for not including the exhibits.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/07/2022